Hillsborough,
No. 4519.

MANCHESTER *v.* LEON H. WEBSTER & a.

Argued December 4, 1956.

Decided January 31, 1957.

*J. Francis Roche*, city solicitor (by brief and orally), for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Brown* orally), for the defendants.

*Craig & Craig, Chretien & Chretien* and *Joseph V. Stancik*, for the remaining defendants *pro se*, furnished no briefs.

BLANDIN, J. The defendants do not now contend that the building code ordinance and the general revisions of 1930 and 1950 were not validly enacted, and the parties agree that the basic issue is whether the building code applies to automotive trailers. The test to determine whether it does is to inquire what the city council intended when it passed the ordinance. *Concord* v. *Morgan*, 74 N. H. 32. The interpretation of the meaning of the ordinance is for this court. *Walsh* v. *Public Service Co.*, 92 N. H. 331. However, the findings of fact which the Trial Court has made with respect to the enactment of the ordinance and which we find supported by the record, must be accepted. See *Pettee* v. *Chapter*, 86 N. H. 419, 423.

These findings in substance are as follows: In 1911 when the building code, which so far as material here remains unchanged, was first enacted trailers were unknown although portable school houses were exempted from the code. See Manchester Building Code, General Revision 1930, s. 595; General Revision 1950, s. 520. Neither in the original ordinance nor in the subsequent revisions were trailers referred to in any manner. From 1941 on, the superintendent of buildings in the city of Manchester knew that trailers were coming into the city and "being set up and being lived in" but he took no action until October, 1950. Parenthetically it should be noted here that while the construction placed on the applicability of the building code by those charged with its execution is not conclusive, the fact that for nearly ten years the code was apparently considered not applicable to trailers is entitled to great weight. *Wyatt* v. *Board of Equalization*, 74 N. H. 552, 569. Furthermore, as the Court found, prior to October, 1950, permits to establish trailer camps, to enlarge and remodel trailers, to connect them with public sewers and water mains, and to install them in various places were granted by the building inspector after approval by the board of adjustment. Relying upon the permits some of the owners, including the defendant Hill, spent large sums of money in purchasing, installing and improving trailers or setting up trailer camps which they otherwise would not have done. In September, 1952, the city first passed an ordinance specifically regulating automotive trailers. This enactment makes no provision for the construction of trailers other than as the defendants' trailers are built, but it is impossible for the defendants "to meet many, if not all, of the specifications of the Building Code" as applied to buildings. On these findings, the Court concluded that it was not the intention of the city council when it passed the ordinance to apply the code to trailers and ruled accordingly that it was not applicable. *State* v. *Downes*, 79 N. H. 505. With this interpretation of the ordinance we are content. *Hogan* v. *Lebel*, 95 N. H. 95.

It is true as the plaintiff argues that courts in other jurisdictions have reached different conclusions in such cases as *Aetna Life Ins. Co.* v. *Aird*, 108 F. (2d) 136, where the question was whether a trailer used as a home and office was a building within the meaning of a double indemnity insurance policy. See also, *Franklin* v. *Metcalfe*, 307 Mass. 386, a case involving the interpretation of a tax statute. In *Tomuschat* v. *Insurance Co.*, 77 N. H. 388, there

was an action based on a fire insurance policy and the court held any structure with walls and roof was a building within the ordinary meaning of the word. However, each case must rest on its own bottom; decisions interpreting language in a different context are not controlling here. It follows that the plaintiff's exception to the ruling that the building code does not apply to automotive trailers cannot be sustained.

The defendants contend the Court's ruling that the trailer ordinance of September 2, 1952, does not apply to trailers introduced into the city prior to its enactment should be sustained. The pleadings failed to raise the question of whether the ordinance of 1952 applied to the trailers involved but the record shows that this issue was tried and that the parties all desire it decided. According to our practice we will consider the matter although the pleadings may be amended to conform to the issues tried. *Thistle* v. *Halstead*, 96 N. H. 192, 194. The ordinance deals with such matters as sanitation and the registration of camps and guests which were obviously enacted for the protection of the public welfare under the police power. See anno. 22 A. L. R. (2d) 774, 780, 784. It also contained zoning provisions and provided for variances in cases of hardship (*s.* 5(c) ) by reference to the statutory tests. RSA 31:72 II; see anno. 22 A. L. R. *supra,* 784.

The effect of the zoning provisions of the ordinance if enforced would be to compel those defendants who incurred substantial expenditures in purchasing and installing trailer parks to move to new locations and to force those who established trailers on their own land to move them to trailer parks and to pay rent to the owners of those parks. Since this would destroy vested rights it cannot lawfully be done. See *Winn* v. *Corporation*, 100 N. H. 280, 281.

As previously noted there are other regulations in the act pertaining to sanitation, the registration of camps and guests and the parking of trailers on the public highway which come under the police power. In the present state of the record where no evidence was introduced by the plaintiff of violations of the police provisions of the ordinance relating to health, safety or morals and no relief was sought under these provisions, the bill was properly dismissed.

*Case discharged.*

All concurred.