MASSACHUSETTS BROKEN STONE COMPANY *vs.* TOWN OF WESTON.

Middlesex.  November 5, 1963. — January 10, 1964.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Validity, Preëxisting nonconforming use.

Respecting land in a town on which stone was quarried, processed and sold and the manufacture and sale of bituminous concrete were conducted, causing "dust, noise, odor, flooding, traffic congestion and blasting effects," and which was located adjacent to an industrial district of a city and contiguous to a twenty tank oil farm there, was flanked on two sides by railroad tracks, was swampy in parts, and was near a dump, but also near a number of established homes in the town and "a development of high-grade homes," inclusion of the land in a limited industrial zoning district, even if the only activities permitted in such district by the zoning by-law were substantially those permitted in a business zoning district, was not invalid as arbitrary, unreasonable, and unrelated to the statutory zoning purposes.  [659–661]

Facts found by a judge of the Land Court justified conclusions that a company which, before the adoption of a zoning by-law by a town placing the company's premises in a limited industrial district in which operations of the "heavy industrial type" were prohibited, had quarried stone on its premises and crushed and sold such stone, and had manufactured bituminous concrete on its premises as a "distinct" business, using stone from its quarry and occasionally small amounts of fully crushed stone brought in from outside sources, was entitled, after the adoption of the zoning by-law, to bring onto its premises fully crushed stone only for use in the manufacture of bituminous concrete, but not to bring onto its premises stone to be subjected to further crushing operations or stone to be processed and sold on its premises as stone.  [661–663]

PETITION filed in the Land Court on July 28, 1961.

The case was heard by *McPartlin,* J.

*Edward O. Proctor* (*Edward O. Proctor, Jr.,* with him) for the petitioner.

*Robert W. Meserve* (*Dana C. Coggins* with him) for the respondent.

SPIEGEL, J.   This is a petition brought in the Land Court under the provisions of G. L. c. 185, § 1, (j1/2), and c. 240, § 14A, both inserted by St. 1934, c. 263, to determine the validity of a zoning by-law as applied to parcels of the petitioner's land and the extent to which it affects its rights in connection with the use of the land.   Both the petitioner and the respondent appeal from the decree below.   The respondent also filed a bill of exceptions to the denial of two of its requests for rulings.[1]

The judge of the Land Court viewed the locus and its environs.   His decision states facts in apparently full detail and incorporates by reference all the exhibits.   Since 1916 the petitioner has operated a stone quarry on its land in Weston where it conducts the business of quarrying, crushing and selling stone, and the manufacture and sale of bituminous concrete.   The bituminous concrete operations were begun after the start of the quarrying, but prior to 1954 when the present zoning by-law was adopted.   Its total tract comprises 84.9 acres.

The by-law in issue in the present appeals involves three parcels which are identified in the exhibits as parcels 1 (1A and 1B) and 7; these are included in "Limited Industrial Districts."   They lie at the easterly edge of Weston in a point which "juts into an industrial district of the City of Waltham."   The tracks of the Fitchburg division of the Boston and Maine Railroad flank the land on the east, and the tracks of the Central Massachusetts division are to the north.   In Waltham, on land contiguous to the petitioner's eastern land is a twenty tank oil farm; immediately to the

---

[1] "7.   Any pre-existing non-conforming use created by petitioner's bringing in, in the years 1950 through 1953, of relatively small quantities of completely crushed and processed stone quarried elsewhere has been abandoned, as a matter of law, since no such stone was brought in in between September 3, 1953, and September 4, 1956, and none has been brought in since October 17, 1956, and the 1950–1953 procedure can give petitioner no present rights as a non-conforming use. . . .

"8.   Petitioner's pre-existing non-conforming uses do not permit it to bring to its premises in Weston stone quarried elsewhere, either for sale, further crushing, further processing, or for use in the manufacture of bituminous concrete . . . ;"

north of the Central division tracks is the town dump. Part of parcel 1 is a swamp. Within a one mile radius of the petitioner's property are 289 homes in Weston, a number of which existed in 1954.

## I.

The Land Court ruled that "the inclusion of Parcels 1A, 1B and 7 in a Limited Industrial district" as defined in § V, subsection C,[2] of the 1954 zoning by-law was a valid exercise of authority under G. L. c. 40, §§ 25–30B, since repealed.[3] The petitioner argues that the Land Court erred in so ruling. It contends that the purported delegation of authority to the board of appeals to grant permits for "light manufacturing purposes" is an unlawful delegation of zoning power, that as a result, the "limited industrial district," as defined in the zoning by-law, is actually a business district, and that the inclusion of the relevant parcels in such a district was "an arbitrary and oppressive interference with petitioner's rights as a landowner."

The issue of whether the "limited industrial district" is in fact a "business district" seems to us to be a question of semantics. The basic question is whether the by-law is "arbitrary or unreasonable, or substantially unrelated to

---

[2] "LIMITED INDUSTRIAL DISTRICTS. In these districts buildings, structures, and premises may be used for one or more of the following purposes:
  1. Church or other religious purpose.
  2. Educational purpose.
  3. Public purpose including municipal purpose.
  4. Eating place.
  5. Office or office building.
  6. Bank.
  7. Store, salesroom or showroom for the conduct of retail business.
  8. Personal service establishment.
  9. Filling station or garage for servicing or repairing of motor vehicles.
  10. Any use which is accessory or incidental to the foregoing.

"No building, structure or premises, in whole or in part, shall be used in the limited industrial districts for any purpose other than those above specified in this subsection, except that in appropriate instances and subject to the provisions of section VIII, subsection C, the board of appeals, by special permit in each instance, may allow use thereof for any other commercial purpose or any trade, light manufacturing, or scientific purpose, but not processing of stone, gravel and the like, a foundry, steel works, or other establishment or operation of the heavy industrial type."

[3] See St. 1954, c. 368, § 1.

the public health, safety, convenience, morals or welfare.''
*Schertzer* v. *Somerville,* 345 Mass. 747, 751.

We do not consider the question of whether the delega-
tion of authority to the board of appeals authorized in the
by-law is proper. Even if the delegation is invalid, and, as
a result, the only activities permitted in the district are sub-
stantially those that would be permitted in a business dis-
trict,[4] we are not convinced that the by-law is unreasonable
or oppressive. The burden is on the petitioner to show
that the by-law is in conflict with the enabling act or with
applicable statutory provisions. *Pierce* v. *Wellesley,* 336
Mass. 517, 521. ''Every presumption is to be afforded in
favor of the validity of an ordinance and if its reasonable-
ness is fairly debatable the judgment of the local authorities
who gave it its being will prevail.'' *Schertzer* v. *Somer-
ville, supra.* Applying these standards, we find that the
petitioner has not sustained the burden of proof placed
upon it.

The petitioner has not proved a case of spot zoning. Cf.
*Shapiro* v. *Cambridge,* 340 Mass. 652, 659. Nor has it
shown that the land in question is unsuitable for the uses
for which it is zoned (whether business or limited indus-
try). Cf. *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 447.

---

[4] See § V, subsection B, of the 1954 zoning by-law, which reads: ''BUSI-
NESS DISTRICTS A AND B. In these districts buildings, structures, and
premises may be used for one or more of the following purposes:

1. Church or other religious purpose.
2. Educational purpose.
3. Public purpose including municipal purpose.
4. Eating place.
5. Office or office building.
6. Bank.
7. Medical or health center.
8. Noncommercial club.
9. Store, salesroom or showroom for the conduct of retail business.
10. Personal service establishment.
11. Filling station or garage for servicing or repairing of motor vehicles.
12. Any use which is incidental or accessory to the foregoing.

''No building, structure or premises, in whole or in part, shall be used in the
business districts for any purpose other than those above specified in this sub-
section, except that in appropriate instances and subject to the provisions of
section VIII, subsection C, the board of appeals, by special permit in each
instance, may allow use thereof for any other business purpose which the board
determines to be consonant with a business district of the foregoing character.''

Although the judge found that the "existence of petitioner's business and operations have not proved a deterrent to residential development," and noted the existence of "a development of high-grade homes" in the vicinity of the petitioner's operations, he also noted that there was "dust, noise, odor, flooding, traffic congestion and blasting effects." We cannot say that the heavy industrial use of the petitioner's property does not have a "real and substantial detrimental effect upon . . . other property in the general vicinity." Cf. *Barney & Carey Co.* v. *Milton, supra,* 446.

At most, the petitioner has proved that the by-law makes its land less profitable than it would be if it were in a heavy industrial district and that the property is suited to the petitioner's present or intended uses. Neither of these considerations is sufficient to invalidate a zoning ordinance. *Simon* v. *Needham,* 311 Mass. 560, 562, 565.

## II.

As the record indicates and as the respondent concedes, "[t]he petitioner clearly had, for many years before the adoption of the zoning by-law . . ., manufactured bituminous concrete in structures on the premises." Bituminous concrete is composed of crushed stone, sand and liquid asphalt. For the most part, the stone used in this process has come from the petitioner's quarry, but on occasions, to meet increased demands, fully crushed stone was brought in from outside sources. In 1950, such "imports" amounted to 3.99% of the stone used; in 1951, they amounted to 4.76%; in 1952, 1.42%; and in 1956, 3.63%. No stone was imported between October 17, 1956, and the date of trial in 1961. Prior to 1961, the petitioner had never brought stone to its premises to be subjected to further crushing operations.

On these facts, the petitioner asks us (1) to affirm the Land Court's ruling that there was a preëxisting nonconforming use to bring fully crushed stone onto the premises for the manufacture of bituminous concrete; (2) to reverse the ruling that the petitioner did not have a nonconforming use to bring onto the premises stone requiring further

crushing, and (3) to rule that the nonconforming use extends to the processing and sale of stone, as stone, rather than as an ingredient in the manufacture of concrete. The respondent asks us to reverse the first of these rulings, to affirm the second, and to deny the third.

The Land Court found that the manufacture and sale of bituminous concrete on parcel 1 is one of "two distinct businesses." As this finding is neither unsupported nor erroneous, we reject the respondent's contention that "the bituminous concrete operation is, and was, maintained as an incident to the quarrying business." Cf. *Burlington* v. *Dunn,* 318 Mass. 216, 223–224.

The standard that this court has adopted in determining whether there has been a change in a preëxisting use is the degree to which the "original nature and purpose of the undertaking remain unchanged." *DeFelice* v. *Zoning Bd. of Appeals of East Haven,* 130 Conn. 156, 162. *Wayland* v. *Lee,* 325 Mass. 637, 643.

In the present case, the petitioner seeks the right to obtain from an outside source the fully crushed stone which it needs to carry on its existing bituminous concrete business. This importation is permissible even though it may prolong the time during which the nonconforming bituminous concrete business can continue. See *Cochran* v. *Roemer,* 287 Mass. 500, 508. It follows that the petitioner may bring onto its premises fully crushed stone provided that this is to be used in the manufacture of bituminous concrete.

The Land Court referred to "the quarrying and crushing of stone for sale" as one distinct business. The petitioner does not contend that there was error in this finding, and we are satisfied that it was correct. On the facts found by the judge he was justified in concluding that the petitioner does not have a nonconforming use to bring onto the premises stone to be subjected to further crushing operations.

Whether the sale of stone processed elsewhere would, as the petitioner contends, "lighten rather than intensify the use of the land" is immaterial. See *DiRico* v. *Board of Appeals of Quincy,* 341 Mass. 607, 609–610. We hold that

the importation of stone to be processed and sold on the premises as stone would be a change in use, and the petitioner has no right thereto. *Lexington* v. *Bean,* 272 Mass. 547, 552–553. *Mioduszewski* v. *Saugus,* 337 Mass. 140, 144. *Hinves* v. *Commissioner of Pub. Works of Fall River,* 342 Mass. 54.

The respondent contends that there was an abandonment of the petitioner's right to import crushed stone onto its premises for use in the manufacture of bituminous concrete. However, the petitioner's right is derived from the preëxistence of the manufacturing operation and not from the previous importation. Therefore, we are not concerned with the issue of abandonment.

Having discussed the issues raised by the respondent's requests for rulings we see no need for further reference thereto. There was no error in denying these requests.

The respondent's exceptions are overruled. The decision of the Land Court is affirmed.

*So ordered.*