Merrimack,
No. 5989.

NEW LONDON

*v.*

EDWARD H. LESKIEWICZ & *a.*

December 1, 1970.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for the plaintiff.

*Stebbins & Bradley* ( *Mr. David H. Bradley* orally ), for the defendants.

LAMPRON, J. Bill in equity by the town of New London to enjoin and restrain the defendants, Edward H. and Marjorie C. Leskiewicz, from selling camping and tenting rights to members of the public on their "Otter Pond" parcel, also called "the shore lot"; and from renting space for trailers or mobile houses on their "fourteen acre tract," also called "inland lots."

The Trial Court ( *Keller,* J. ) made certain findings and rulings and decreed that: "A. The defendants are enjoined from renting space on the Otter Pond parcel for use by campers or trailers"; and "B. The defendants are enjoined from renting space on the fourteen acre tract for tenting trailers and for camping trailers." The defendants excepted to certain rulings made by the court and filed a motion to set aside its decree. By agreement of the parties this motion was not heard and has been treated as denied subject to defendants' exception. Defendants, however, did not brief or argue their exception as it relates to part "A" of the decree and it is considered waived. *Standard &c. Ins. Co.* v. *Gore,* 99 N.H. 277, 284, 109 A.2d 566, 571 ( 1954 ).

To sustain its petition for an injunction, the town relies on a zoning ordinance adopted by the town meeting on March 11, 1958. Under its provisions, defendants' fourteen acre tract, with which we are concerned on this appeal, is located in a "Rural-Agricultural District" which does not permit the uses being made by the defendants. The latter base their right to rent space thereon for tenting trailers and camping trailers on a non-conforming use existing prior to the date of adoption of the ordinance and also on a variance granted them by the Zoning Board of Adjustment on June 19, 1958 and on the resulting permit issued the next day.

This fourteen acre tract is made up of a three acre parcel purchased by the defendants in 1953 and of an eleven acre lot acquired on May 22, 1957. The trial court found that "[t]he defendants had, prior to the passage of the Ordinance, improved the fourteen acre tract, by trimming trees, removing and burning brush, grading, erecting retaining walls, building a road, installing a cesspool, and erecting an out-house. They had also, prior to the passage, accommodated on that tract, two tents, one picnic party, and a camping trailer; the trailer was there about three weeks, and the only charge made was $1.00."

In the spring of 1958, defendants started to erect a building on this tract which they intended to use for their summer occupancy and also to provide services to picnickers and campers. They were informed by the Selectmen that they needed a building permit to erect the building (art. VIII) and because a business use was involved the permit could not be issued until a variance was applied for and obtained from the Board of Adjustment (art. IX).

Defendant Edward, in his notice of appeal to the Board from the denial of a permit by the Selectmen, stated that his investment in the premises, on or about June 5, 1958, was about $4000 "plus my own labor, also $2000 to $3000 more to finish present building." He also stated that the proposed use was "Picnic & camping park, also expand present size of proposed building if business warrants and build cabins if there is a demand." He further stated that it was a "[c]hance to do outdoor work, serve the public; perhaps make a little money . . . ."

Article IX of the town zoning ordinance grants to the Board of Adjustment all the general powers given to such boards by RSA ch. 31. Section 72 thereof grants a board of adjustment, among others, the power to hear and decide special exceptions to the terms of the ordinance (para. II), and to grant a variance from the terms of the ordinance (para. III) when its literal enforcement will result in unnecessary hardship.

After a public hearing was held on defendants' appeal on June 18, 1958, the Board of Adjustment granted defendants a variance "for the erection of a building [24' by 32'] for summer occupancy and to provide services to picnic parties and campers" subject to the condition "that the requested counter service be within" the structure authorized. A permit therefor was granted to the defendants by the Selectmen on June 20, 1958.

On May 13, 1963, defendants appealed to the Board from the denial of a permit to erect a 20' x 24' building to contain sanitary facilities, consisting of toilets and showers, on their land which was being used as a "camping area." The Board sustained the appeal. In its written decision the Board stated that in 1958 defendants were granted a variance for "Picnic and Camping Park" which in its opinion "was contrary to law, in that sufficient hardship did not exist." The Board decided however, that defendants had created a nonconforming use which it had a right to continue but had no right to enlarge.

It is well recognized law that, if before the adoption of the town zoning ordinance on March 11, 1958, the defendants had established on their fourteen acre tract a use as a picnic and camping park, they acquired a vested right to continue that use thereafter as a nonconforming use. *Manchester* v. *Webster,* 100 N.H. 409, 412, 128 A.2d 924, 926-27 ( 1957 ); *Edgewood Civic Club* v. *Blaisdell,* 95 N.H. 244, 246, 61 A.2d 517, 518 ( 1948 ); RSA 31:62; 2 Rathkopf, The Law of Zoning and Planning 58-1 ( 1960 ). The New London ordinance recognized this right in article VII and defines it as "a use of any building, structure, or land, which does not conform to the use regulations of the district in which such use exists." It is not clear from the record whether or not the trial court found that the defendants had established such a nonconforming use.

However, where shortly after the passage of the ordinance the defendants were granted a variance by the Board of Adjustment to operate a picnic and camping area on their land based on approximately the same factors which would have established their nonconforming use, it is unnecessary to separate the sources of their rights. *Vlahos Realty Co.* v. *Little Boar's Head District,* 101 N.H. 460, 464, 146 A.2d 257, 261 ( 1958 ); *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 264 A.2d 572, 574, 575 ( 1969 ); *Arundel Corp.* v. *Board of Zoning App.,* 255 Md. 78, 82-84, 257 A.2d 142, 146 ( 1969 ). "Since the extension or enlargement of a nonconforming use may be more detrimental to zoning than a variance, it has generally been held that a nonconforming use stands in no preferred position. Consequently most decisions that have passed on the point have held that the extension or enlargement of a nonconforming use is to be treated as a variance within the provisions of zoning ordinances." *Ackley* v. *Nashua,* 102 N.H. 551, 554, 163 A.2d 6, 9 ( 1960 )

( citations omitted ); *Glidden* v. *Nottingham,* 109 N.H. 134, 135, 244 A.2d 430, 431 ( 1968 ).

A variance has been defined as authority granted to the owner to use his property in a manner otherwise violative of the zon - ing regulations. *Stone* v. *Cray,* 89 N.H. 483, 487, 200 A. 517, 521 ( 1938 ); *Allen* v. *Zoning Board of Appeals,* 155 Conn. 506, 510, 235 A.2d 654, 656 ( 1967 ); 2 Yokley, Zoning Law and Practice *s.* 16-2 ( 3d ed. 1965 ). In other words, a variance is in the nature of a waiver of the strict letter of the zoning ordi - nance without sacrifice to its spirit and purpose. RSA 31:72 ( III ); 101 C.J.S. Zoning *s.* 273 ( 1958 ). The variance granted the defendants resulted in a nonconforming use ( *Glidden* v. *Not - tingham supra* ) on which they have properly relied over the ensuing years thus acquiring a vested right which could not be affected or changed by the findings or rulings of the Board of Adjustment made on June 18, 1963, five years after the var - iance was granted. *Vlahos Realty Co.* v. *Little Boar's Head Dis - trict,* 101 N.H. 460, 464, 146 A.2d 257, 261 ( 1958 ); *Appeal of Barefoot,* 437 Pa. 323, 263 A.2d 321 ( 1970 ); *Haba* v. *Cuff,* 201 N.E.2d 343, 346 ( Ohio App. 1963 ); 2 Rathkopf, The Law of Zoning and Planning 46-4, 57-1, 57-6 ( 1964 ); 101 C.J.S. Zoning *s.* 314 ( 1958 ). *See Suprenant* v. *Nashua,* 101 N.H. 43, 131 A.2d 632 ( 1957 ).

Having thus acquired a variance or nonconforming use to use their fourteen acre tract as a picnic and camping park, any regulation of the New London zoning ordinance which would prevent that use did not apply to their fourteen acre tract. *Stone* v. *Cray,* 89 N.H. 483, 487, 200 A. 517, 521 ( 1938 ); *Glidden* v. *Nottingham,* 109 N.H. 134, 244 A.2d 430 ( 1968 ). Hence the issue presented on this appeal, which is whether the defendants can rent space for tenting trailers and for camping trailers, can - not be resolved by a determination of whether such trailers come within article III ( F ) of the ordinance which regulates the use of " trailers and / or mobile homes " in all districts of the town. Rather, the issue is whether the use of such trailers is a method ordinarily and reasonably adopted to make the original use granted to the defendants available to them without constituting a substantial change in the nature and purpose of that original use or whether on the contrary, the use of these trailers would constitute such a departure from the original use as to constitute a new and impermissible use. *Frost* v. *Lucey,* 231 A.2d 441,

447, 448 ( Me. 1967 ); *Connecticut Sand & Stone Corp.* v. *Zoning Bd. of App.,* 150 Conn. 439, 190 A.2d 594 ( 1963 ); *Town of Bridgewater* v. *Chuckran,* 351 Mass. 20, 217 N.E.2d 726 ( 1966 ); *Superintendent & I of Bldgs.* v. *Villari,* 350 Mass. 176, 213 N.E.2d 861 ( 1966 ).

The burden of establishing that the use in question is fundamentally the same use and not a new and impermissible one is on the party asserting it. This is in accordance with the general policy of zoning to carefully limit the extension and enlargement of nonconforming uses. *Arsenault* v. *Keene,* 104 N.H. 356, 359, 187 A.2d 60, 62 ( 1962 ); *Keene* v. *Blood,* 101 N.H. 466, 469, 146 A.2d 262, 264 ( 1958 ); Annot., 87 A.L.R.2d 4, 10 ( 1963 ). However, the use cannot be interpreted in such a way as to unlawfully reduce the original vested interest acquired by the nonconforming use or by the variance. *Molnar* v. *George B. Henne & Co.,* 377 Pa. 571, 105 A.2d 325 ( 1954 ); *Cole-Collister Fire Protection Dist.* v. *City of Boise,* 93 Idaho 558, 468 P.2d 290, 293 ( 1970 ); 2 Rathkopf, The Law of Zoning and Planning 58-18 ( 1960 ).

The fact that improved and more efficient or different instrumentalities are used in the operation of the use does not in itself preclude the use made from being a continuation of the prior nonconforming use providing such means are ordinarily and reasonably adapted to make the established use available to the owners and the original nature and purpose of the undertaking remain unchanged. *Superintendent & I of Bldgs.* v. *Villari supra; Massachusetts Broken Stone Co.* v. *Town of Weston,* 346 Mass. 657, 195 N.E.2d 522 ( 1964 ); *Connecticut Sand & Stone Corp.* v. *Zoning Bd. of App.,* 150 Conn. 439, 190 A.2d 594 ( 1963 ); *Horwitz* v. *Dearborn TP.,* 332 Mich. 623, 52 N.W.2d 235 ( 1952 ); 58 Am. Jur. Zoning *s.* 165 ( 1948 ). *See Bois* v. *Manchester,* 105 N.H. 300, 199 A.2d 95 ( 1964 ).

The determination of whether the use challenged is substantially the same kind of use as that which was originally obtained is necessarily based in large measure on the facts and circumstances of the particular case. *Santoro* v. *Zoning Bd. of Review,* 93 R.I. 68, 171 A.2d 75 ( 1961 ); 101 C.J.S. Zoning *s.* 191 ( 1958 ); Annot., 87 A.L.R.2d 4, 9 ( 1963 ). In deciding whether the particular activity is within the scope of the established or acquired nonconforming use consideration may be given to, among others, the following factors: ( 1 ) to what extent does the use in ques-

tion reflect the nature and purpose of the prevailing nonconforming use; ( 2 ) is it merely a different manner of utilizing the same use or does it constitute a use different in character, nature and kind; ( 3 ) does this use have a substantially different effect on the neighborhood. The degree to which the original nature and purpose of the undertaking remains unchanged largely determines whether there has been a change in the preexisting use. *Frost* v. *Lucey,* 231 A.2d 441, 448 ( Me. 1967 ); *Superintendent & I of Bldgs.* v. *Villari,* 350 Mass. 176, 213 N.E.2d 861 ( 1966 ); *Crawford* v. *Building Inspector,* 248 N.E.2d 488 ( Mass. 1969 ).

We are unable to say on the record before us that the decree of the trial court was based on a finding and ruling that the renting of spaces by the defendants on their fourteen acre tract for tenting trailers and for camping trailers would constitute such a change in or enlargement of the use of their land for the granted use of a picnic and camping park as to amount to the substitution of a new and different use. In the absence thereof that part of the court's decree and finding appealed from ( part " B " ) are vacated and the case is remanded for disposition in accordance with the principles enunciated in this opinion.

In view of the result reached, we find it unnecessary to decide the other issues raised by the parties.

*Decree vacated in part.*
*Remanded.*

All concurred.