Carroll
No. 87-434

TOWN OF WOLFEBORO (PLANNING BOARD)

v.

CHARLES H. SMITH & a.

March 6, 1989

*Barto and Puffer P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the plaintiff.

*Frederic L. Cox*, of Wolfeboro, and *Pamela D. Albee*, of Ossipee (*Ms. Albee* on the brief and orally), for the defendants, Charles H. Smith, Richard D. Kourian and Everett S. Albee.

JOHNSON, J.  The plaintiff, Town of Wolfeboro (Planning Board) (hereinafter the Town), appeals from an order of the Superior Court (*Dickson,* J.) denying the imposition of a cease and desist order, based on its finding, upon an agreed statement of facts, that the defendants were entitled to continue excavating their property, under Laws 1979, 481:3, the grandfather clause of RSA chapter 155-E. We reverse and remand.

The defendants are the owners of approximately thirty-five acres of land located in Wolfeboro. Since 1950, when previous owners began excavating the property, an excavation pit has been continuously operated. On August 24, 1979, RSA chapter 155-E took effect. This statute requires owners to obtain a permit before their property can be excavated. RSA 155-E:2. Laws 1979, 481:3, however, allows the owner of an "existing excavation" to "continue such existing excavation" without a permit.

On the effective date of RSA chapter 155-E, approximately eight acres of the land now owned by the defendants had been excavated. By October 14, 1983, the date on which the defendants acquired title to the property, ten acres had been excavated. Additional excavation continued after the current owners acquired the property. There currently remain approximately ten acres of the total property to be excavated. Such excavation, according to the parties, will take two to five years to complete.

There has been some previous activity on the part of the land not yet excavated. Prior to the present ownership, the entire parcel was timbered twice, once in 1949 or 1950, and once about 1965. There was no agreement between the parties regarding the intent of the prior timbering activity as it may have related to plans to excavate. The defendants attempted, according to an unrebutted affidavit of plaintiff's counsel, to insert into the agreed statement of facts a statement as to the purpose of the timbering operations. Plaintiff's counsel objected, and the defendants' counsel agreed to delete the statement as to purpose or intent. Sometime after October 14, 1983, the present owners cut trees and brush, removed stumps and topsoil and spread manure to create topsoil for reclamation purposes over the entire unexcavated parcel. It was agreed that this activity was undertaken by the defendants in order to facilitate the excavation of sand on the property which they had purchased.

Subsequent to requesting the defendants to apply for a permit in accordance with RSA chapter 155-E, the Town filed a petition for a cease and desist order against the defendants. In its petition, the Town requested the court to enjoin the defendants temporarily and permanently from excavating their property without first

obtaining a permit. On August 13, 1987, the trial court ruled that the defendants were entitled under Laws 1979, 481:3, to continue their excavation operations over the entire parcel of land owned by the defendants, without first obtaining a permit. The court found from the agreed statement of facts that "the defendants and predecessors in title manifested an intention to excavate the entire lot and in fact have proceeded to do just that. The plaintiff has failed to convince the court otherwise and has failed to convince the court why such extraordinary relief should be granted." The trial court also found, in response to plaintiff's requests for findings of fact, that the "size of the land area which is being excavated, or which has been excavated, . . . has increased substantially since August 24, 1979," that the "location of the excavation or excavations on defendants' property has changed substantially," and that the "rate of removal of earth from the defendants' premises since defendants' [sic] purchased the property in October, 1983, has increased substantially as compared to August 24, 1979." On August 25, 1987, the Town filed a motion for reconsideration, which was denied. This appeal followed.

There is no dispute that the excavation of earth for commercial purposes is a permitted use under the Wolfeboro zoning ordinance. The sole issue before the court, as agreed by the parties, is whether the grandfather clause of RSA chapter 155-E, as set forth in Laws 1979, 481:3, entitles the defendants to excavate the remaining approximately ten acres of land located on their property, which contain valuable deposits, without first obtaining a permit.

■ As a first step in statutory construction, we will examine the language found in the statute. *See Appeal of Coastal Materials Corp.*, 130 N.H. 98, 101, 534 A.2d 398, 399 (1987).

Laws 1979, 481:3, provides as follows:

"Any owner of an existing excavation in use as of the effective date of this act [Aug. 24, 1979] and which is subject to this act *may continue such existing excavation without a permit* but shall perform restoration in compliance with RSA 155-E:5 within a reasonable period following the intended cessation of the excavation or any completed section thereof."

(Emphasis added.) The term excavation is defined in the body of RSA 155-E:1 as a *"land area which is used, or has been used,* for the commercial taking of earth, including all slopes." (Emphasis added.) The Town argues that by its very language the provision exempts only the "land area" which is being used, or which had

been used, as of August 24, 1979, and therefore exempts continued excavation of only that land which has already been excavated as of the effective date of the chapter. Thus, according to the Town, an excavation can be continued only in depth; the grandfather clause does not exempt any other portion of the entire property upon which the excavation activities have been conducted.

However, the difficulty with accepting the Town's interpretation of the language found in the statute lies in the ambiguity of the phrase "land area which is used" for excavation and its distinction from an area which "has been used" for excavation. The Town asserts that the former term refers to land which is "being used," *i.e.*, earth has already been excavated as of the effective date of the statute, while the latter refers to land which "had been used." However, the language of the statute does not require this interpretation.

The permit process of RSA chapter 155-E requires that an excavator restore the land after excavation has been completed. If the phrase "has been used" applies only to pits that "had been used," that is, depleted prior to the enactment of the statute, no rational excavator would apply to conduct excavations in those areas because he could reap no benefits, while at the same time he would acquire duties to restore these depleted pit areas through reclamation efforts. (*See* RSA 155-E:3, II and IV, requiring the application to be very specific as to the location, size, breadth, depth and slope of the excavation.) A more reasonable interpretation of the phrase "has been used" is land that has been partially excavated as of the effective date of the statute, and the owner later desires to renew excavation in the same area.

We find the phrase "land area which is used" for excavation to include land from which no earth has yet been taken, if such land has been clearly designated as an area for future excavation by an objective manifestation of the intent of the excavator to continue an operation onto that particular land area. In interpreting this statute, if land which "is used" for excavation refers only to that land area which "has been used" for excavation, the legislature had no reason to include the phrase "is used" whatsoever because it would be surplusage. *See* RSA 155-E:1, II. We assume that all words in a statute were meant to be given meaning in the interpretation of a statute. *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984).

If the phrase "continue such existing excavation," as found in the grandfather clause, were understood to allow only vertical and not lateral expansion, such an interpretation would lead many owners,

including the present defendants, to find that they could not "continue" their existing excavations for very long, if at all. Such an interpretation is also contrary to the decisions of the many courts which have examined a similar issue; namely, whether lateral expansion of an excavation onto land previously unexcavated constitutes a permitted continuation of a nonconforming use or an unpermitted expansion. *See Stephan & Sons v. Municipality of Anchorage*, 685 P.2d 98 (Alaska 1984); *McCaslin v. City of Monterey Park*, 163 Cal. App. 2d 339, 329 P.2d 522 (Cal. Dist. Ct. App. 1958); *County of DuPage v. Elmhurst-Chicago Stone Co.*, 18 Ill.2d 479, 165 N.E.2d 310 (1960); *Town of Billerica v. Quinn*, 320 Mass. 687, 71 N.E.2d 235 (1947); *Town of Burlington v. Dunn*, 318 Mass. 216, 61 N.E.2d 243, *cert. denied*, 326 U.S. 739 (1945); *Fredal v. Forster*, 9 Mich. App. 215, 156 N.W.2d 606 (Mich. Ct. App. 1967); *Hawkins v. Talbot*, 248 Minn. 549, 80 N.W.2d 863 (1957); *Lambe v. McKee, Inc.*, 10 N.J. Misc. 649, 160 A. 563 (1932); *Moore v. Bridgewater Township*, 69 N.J. Super. 1, 173 A.2d 430 (N.J. Super. Ct. App. Div. 1961); *Syracuse Aggregate Corp. v. Weise*, 434 N.Y.S.2d 150, 414 N.E.2d 651 (1980); *Borough of Cheswick v. Bechman*, 352 Pa. 79, 42 A.2d 60 (1945); *Gibbons & Reed Co. v. North Salt Lake City*, 19 Utah 2d 329, 431 P.2d 559 (1967). We are not aware of any jurisdiction which has stated that "continuing" an excavation necessarily allows only for an increase in depth and not in width.

The majority of courts which have examined the issue of what it means to continue an excavation as a nonconforming use have found the excavation to be continuing rather than expanding when the excavation was limited to that area which the owner had, prior to the restrictive ordinance, "appropriated," or where he had "manifested an intention," by overt actions, to excavate, even if he had not yet actually excavated that section of the land. *See Stephan & Sons, supra* at 102 (gravel pit operator could not expand its operations past areas actually excavated at the time the restriction went into effect, because the operator's use of the pit "in no way manifestly indicated an objective intent to appropriate the entire fifty-three acres"); *Elmhurst-Chicago Stone Co., supra* at 485, 165 N.E.2d at 313 (excavation allowed to continue on entire plot, since plot had been devoted to excavation as evidenced by numerous switch tracks, although stone had not yet been removed from all portions of the land); *Lambe, supra* at 651, 160 A. at 564 (owner could continue to excavate entire ten acres since "the tract as a whole was used for excavating purposes even though only a part of it was actually dug"); *Moore, supra* at 16, 173 A.2d at 437 (because owner had made test holes throughout the property,

marked off boundaries by erecting a fence, and surveyed the entire tract, it was "clear that the entire 20.47 acres . . . were dedicated" to excavation); *Syracuse Aggregate Corp., supra* at 154, 414 N.E.2d at 655 (landowner, by removing materials from time to time from various portions of the property, by placing service roads throughout property, and by constructing processing structure in the center of property, had "manifest[ed] an intent to appropriate the entire parcel to the particular business of quarrying"); *Gibbons, supra* at 336, 431 P.2d at 564 (land in question was an integral part of gravel operations based on fact that there were many haul roads connecting it with other property, that it had been used for stockpiling, that owners had removed some sand from the land previously, and that owners had contracted to remove fill from land prior to passage of the restrictive ordinance). Only by allowing the continued excavation of land previously appropriated for that use would an owner truly be able to "continue" an excavation which he had begun. *See* cases cited above.

We find that the legislature intended the phrase "continue such existing excavation" to embody the concept of "continuation" as it has been understood by those courts which have examined the concept in the context of restrictive zoning ordinances. We hold, as the majority of courts have held, that lateral expansion of an existing pit to land previously unexcavated will be considered a continuation of a previous excavation if the land had been appropriated for excavation prior to the effective date of RSA chapter 155-E, by actions which objectively show the appropriation. Intent alone is not enough. *See Wunderlich v. Town of Webster*, 117 N.H. 283, 285, 371 A.2d 1177, 1178–79 (1977). A "landowner, merely by preparing to engage in a gravel operation and undertaking a few self-serving acts of a very limited nature," cannot be said to "have thrown a protective mantle . . . over [the] entire parcel of land." *Syracuse Aggregate Corp.*, 434 N.Y.S.2d at 154, 414 N.E.2d at 655. Excavation is also not "continuing" when it expands to an adjoining parcel of land. *See Syracuse Aggregate Corp. supra.*

Although we hold that the legislature intended to allow excavation to continue, without a permit, onto previously unexcavated land which had been appropriated for that use, we understand the phrase "continue such existing excavation" to contain some limitation on an increase in the area or the intensity of the excavation.

In general, courts have held that although an increase in the intensity of a nonconforming use does not usually amount to a "change" or "expansion" of that use, *see Carroll v. Hurst*, 103 Ill. App. 3d 984, 990, 431 N.E.2d 1344, 1348 (Ill. App. Ct. 1982); *Powers v. Building Inspector of Barnstable*, 363 Mass. 648, 654–58, 296 N.E.2d 491, 494–99 (1973); *Stegall v. New Hanover Zon. Bd. of Adj.*, 87 N.C. App. 359, 364, 361 S.E.2d 309, 312 (N.C. Ct. App. 1987); *see also* 1 ANDERSON, AMERICAN LAW OF ZONING 3d § 6.38 (1986); 4 RATHKOPF, THE LAW OF ZONING AND PLANNING § 51.07[3] (1982), an increase in intensity which serves to change the character or purpose of the nonconforming use will be considered to have changed the use. *See Powers*, 363 Mass. at 653, 296 N.E.2d at 495; *see also New London v. Leskiewicz*, 110 N.H. 462, 467–68, 272 A.2d 856, 860 (1970). A great increase in the size or scope of a use has also been considered to be a factor in determining whether the character of the use has been changed, so that the use is no longer a continuing one. *See Knowlton v. Browning-Ferris Industries*, 220 Va. 571, 576, 260 S.E.2d 232, 237 (1979). In order to determine whether a use should be considered a "continuation" of a prior use or a "change" in use, courts have considered whether the use has a substantially different effect on the neighborhood. *See Leskiewicz*, 110 N.H. at 468, 272 A.2d at 860; *Knowlton*, 220 Va. at 577, 260 S.E.2d at 237; *Powers*, 363 Mass. at 655, 296 N.E.2d at 495; *De Felice v. Zoning B. of Appeals of Town of East Haven*, 130 Conn. 156, 163–64, 32 A.2d 635, 638–39 (1943); *Town of Burlington v. Dunn*, 318 Mass. at 223, 61 N.E.2d at 247; *see also Town of Hampton v. Brust*, 122 N.H. 463, 469, 446 A.2d 458, 461 (1982).

■ That the legislature intended the exemption to embody this limitation is supported by the stated purpose of RSA chapter 155-E. Laws 1979, 481:1, states that the purpose of RSA chapter 155-E was to grant:

> "municipalities the authority to cope with the recognized safety hazards which open excavations create; to safeguard the public health and welfare; to preserve our natural assets of soil, water, forests and wildlife; to maintain aesthetic features of our environment; to prevent land and water pollution; and to promote soil stabilization."

If people could "continue such existing excavations" without limit, these purposes could be defeated. We therefore infer that the legislature intended to limit excavation without a permit, when the increase in the area or in the intensity of the excavation is so great that the nature of the use or its impact on the neighborhood is substantially different.

In conclusion, we hold that a party who desires to continue excavation operations without a permit under RSA chapter 155-E must meet a three-pronged test: First, he must prove that excavation activities were actively being pursued when the law became effective; second, he must prove that the area that he desires to excavate was clearly intended to be excavated, as measured by objective manifestations and not by subjective intent; and, third, he must prove that the continued operations do not, and/or will not, have a substantially different and adverse impact on the neighborhood. A municipality requesting that a permit be obtained need only prove that excavations are ongoing and that no permit has been granted. Upon this showing, the burden of proof shifts to the excavator to prove all three prongs of the test which we have outlined above.

In the instant case, the superior court found that the defendants and their predecessors in title have "manifested an intention to excavate the entire lot." This finding was made without an evidentiary hearing on the objective intent of the defendants or their predecessors in title. It is clear from the record that the defendants were aware that the trial court would have to find a manifestation of intent to continue the excavation over the entire parcel if there was to be a finding that the defendants' operation fell under the grandfather clause of the statute. The only agreed fact submitted to the trial court that would indicate such an objective manifestation of intent was the fact that the land had been timbered twice prior to the effective date of the statute. This evidence, standing alone, is inadequate to manifest the necessary objective intent to excavate the further ten acres in question. Hence, the trial court's finding of intent was error.

The burden of proving the "intent" to excavate an area larger than that already excavated falls on the party claiming an exemption under the grandfather clause, just as the burden of proof is on the party claiming a nonconforming use. See *Leskiewicz*, 110 N.H. at 467, 272 A.2d at 860. Since the defendants had the burden of proof on the issue of intent, and failed to present adequate evidence at an evidentiary hearing or through an agreed statement of facts, the defendants have failed to meet their burden of proof. We therefore remand the case to the superior court for an order granting the requested injunctive relief.

*Reversed and remanded.*

All concurred.