**CITY OF PORTSMOUTH,**
**Plaintiff–Appellant,**

**v.**

**Richard SCHLESINGER and William Weinstein, Defendants–Appellees.**

No. 94–1274.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1994.

Decided Feb. 3, 1995.

Steven E. Grill, with whom Alexander J. Walker, Jr. and Devine, Millimet & Branch, P.A., Manchester, NH, were on brief, for appellant.

Christopher Cole, with whom Peter S. Cowan and Sheehan, Phinney, Bass & Green, P.A., Manchester, NH, were on brief, for appellees.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and YOUNG,* District Judge.

* Of the District of Massachusetts, sitting by designation.

YOUNG, District Judge.

This contract action came before the district court in exercise of its diversity jurisdiction. The law of New Hampshire controls. The record amply supports the careful findings of the district judge and thus the facts may be simply stated. It is the law of New Hampshire that is complex.

The appellees Richard Schlesinger and William Weinstein (the "Developers") are real estate developers who were the sole general partners in Portsmouth Coastal Development Partners ("Portsmouth Coastal").[1] In 1985, Portsmouth Coastal acquired from the plaintiff, the City of Portsmouth (the "City"), certain real property in the City known as Mariner's Village. At the time, Mariner's Village had the greatest concentration of low income housing in the City. The Developers planned to turn the existing apartment units in Mariner's Village into condominiums, and build more condominiums as well. The proposed increase in housing density required a zoning change.

The Developers promptly commenced negotiations with City authorities to obtain this zoning change. After negotiations resulting in several draft ordinances, the City Planning Board approved a draft ordinance which provided, among other things, that the Developers build an additional 208 units in a new Special Overlay District, paying to the City $8,620 as each additional unit was built to an eventual total of $1,792,960.[2] The Developers were to preserve some of the units as rental apartments at subsidized levels.

In further negotiations with the City, the Developers sought to build still more condominium units. Eventually, the Developers executed a promissory note as individuals and as partners of Portsmouth Coastal obligating them to pay to the City a flat sum of $2,500,000 in six lump-sum payments,[3] which sum was to be placed in a housing trust fund or other entity created by the City Council. The increased payment in exchange for the zoning change allowed the Developers to construct the additional units, but obligated them to pay the City in accordance with the terms of the promissory note regardless how many units were actually built and sold, "no strings attached." On November 11, 1986, the City Council approved the requested Special Overlay District ordinance contingent on, *inter alia*, the signing of the promissory note upon which this action is based. The Developers proceeded with their development plan, made the first two payments of $400,000 each on November 1, 1987 and November 1, 1988, and then defaulted by failing to make payment on November, 1, 1989.

The City promptly filed a complaint in the District Court of New Hampshire to recover the additional $1,700,000 owed it under the Developers' promissory note. Upon the eve of a trial scheduled in 1992, the Developers moved to amend their original answer to include an "illegality" defense, i.e., that under New Hampshire law the consideration for the promissory note in the amount of $2,500,000 was illegal contract zoning. The City claimed the Developers had waived this defense by failing timely to assert it in the manner it said was required by New Hampshire Rev.Stat.Ann. sections 677:2 and :4 ("RSA ___"). A visiting district judge allowed the amendment, rejecting the City's defense of untimely filing as matter of law.

After a two-day bench trial in 1994 upon a stipulated record, the district court held that (1) New Hampshire law recognized the propriety of "conditional use zoning," i.e., a zoning change conditioned on a payment or conferral of some amenity on a municipality by the beneficiary of the change, *if* (2) the pay-

---

1. The Court, for the sake of simplicity, will use the single term "Developers" to refer to the conduct or actions of Portsmouth Coastal and either or both of its partners, the defendants-appellees herein.

2. There is some confusion in the record as to the total sum to be paid for the additional units. *See* Appellee's Brief at 7 ($1,792,260); *id.* at 8 ($1,796,260); Revised Draft Ordinance (Joint Appendix, Vol. II, at 304) ($1,792,260); Stipulation

of Agreed Upon Facts ¶ 19 (Addendum to Appellant's Brief at A–30) ($1,796,260). While nothing turns on the point, the Court takes judicial notice of the fact that the product of $8,620 and 208 is none of these figures, but rather $1,792,960.

3. By the terms of the promissory note, the Developers were to pay $400,000 on November 1st of each year from 1987 to 1991, inclusive, and $500,000 on November 1, 1993.

ment or amenity bore some "rational nexus" to the burden to be borne by the municipality due to the zoning change and the special benefits conferred on the developer. *See Land/Vest Properties, Inc. v. Town of Plainfield,* 117 N.H. 817, 823, 379 A.2d 200, 204 (1977) (municipality empowered to require fee for site plan and subdivision approval provided that a "rational nexus" existed between the amount of the fee and the burdens imposed on the municipality by the development). The district court went on to find that factually no such rational nexus existed here as between the $1,700,000 payment sought by the City and any demonstrable burden to be borne by it due to the zoning change. Accordingly, the district court upheld the Developers' illegality defense and entered judgment for them. The City appeals.

■ This Court exercises *de novo* review over determinations of state law made in the course of a bench trial. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1990); *American Title Ins. Co. v. East West Fin.,* 16 F.3d 449, 454 (1st Cir.1994). The Court reviews mixed questions of fact and law for clear error, *Salve Regina,* 499 U.S. at 233, 111 S.Ct. at 1222 ("deferential review"); *Touch v. Master Unit Die Products, Inc.,* 43 F.3d 754, 757 (1st Cir.1995); *In re Howard,* 996 F.2d 1320, 1327–28 (1st Cir.1993), even where "the record consists entirely of stipulated and documentary evidence." *American Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc.,* 689 F.2d 295, 298 (1st Cir.1982).

■ The undisputed record before the district court amply supports the conclusion of the district judge that no rational nexus existed between the amount of the Developers' promissory note and any burden imposed on the City due to the zoning change. We therefore necessarily confront the timeliness of the Developers' challenge to the le-

gality of the fee they had agreed to pay to the City. The City Council approved the Special Overlay District ordinance late in 1986 but more than five years passed (and the Developers commenced construction pursuant to the requested zoning change—and paid $800,000 on their promissory note) before it occurred to them to suggest, through counsel, that the entire deal was illegal. Too late, says the City, citing the statutory scheme set out in RSA 677 which it reads as restricting the time in which challenges to zoning-related decisions must be brought.[4] After all, the City argues, challenges to land use planning decisions by municipalities are ordinarily waived unless made within the applicable statutory time restrictions. *Dermody v. Town of Gilford Planning Bd.,* 137 N.H. 294, 296, 627 A.2d 570, 571 (1993) (appeal from planning board decision waived pursuant to RSA 677:15[I] ); *Town of Auburn v. McEvoy,* 131 N.H. 383, 388, 553 A.2d 317, 320–21 (1988) (Souter, J.) (same, even though type of conditional subdivision requirement at issue had been found unconstitutional in intervening case).

The City's reaction to the Developers' late blooming illegality defense is understandable, but it suffers from a lack of focus. As the Developers point out, the action they challenge here is not that of the local planning board but rather that of the City Council itself. Accordingly, the proper limitation, if applicable, is found in RSA 677:2 and :4, which provide that any person aggrieved by an order or decision of a local legislative body must first move for rehearing within 20 days and, that failing, may appeal to the New Hampshire Superior Court upon the grounds raised in the petition for rehearing "within 30 days after the action complained of has been recorded."

The Developers are, of course, as far beyond this statutory limitation as they are beyond RSA 677:15(I). But what of it? they say, citing *Blue Jay Realty Trust v. City of Franklin,* 132 N.H. 502, 567 A.2d 188 (1989)

---

4. Under New Hampshire law, a person aggrieved by a decision of a planning board may present a petition to the Superior Court for review within 30 days after the filing of the decision pursuant to RSA 677:15(I). A person affected by an order or decision of a zoning board of adjustment, a local legislative body, or a board of appeals in regard to zoning must first move for rehearing within 20 days, RSA 677:2, and, if still unsatisfied, may then petition the Superior Court for redress within 30 days, RSA 677:4.

(Souter, J.) (petition for declaratory judgment challenging validity of zoning amendment allowed to proceed although untimely under RSA 677:2 and :4). The City joins issue on this point, arguing strenuously that *Blue Jay Realty* has no application to the undisputed facts of record here. After considerable research and reflection, we conclude that, while *Blue Jay Realty* governs analysis of the timeliness issue, its teaching is actually more limited than the reading adopted in the district court. We must emphasize, however, that the New Hampshire decisions are murky in this area and that our analysis of them governs this case alone.

*Blue Jay Realty* came before the New Hampshire Supreme Court upon appeal of the dismissal of the plaintiff's action for declaratory and injunctive relief as untimely under RSA 677:2 and :4. Speaking for the court, Justice Souter explained that the plaintiff's challenge under the federal civil rights statute had properly been dismissed since the plaintiff had not first sought a variance from the local authorities, *id.* at 505–06, 567 A.2d at 191; that the rehearing requirement of RSA 677:2 was "not absolute" and "was not intended to burden local legislative bodies and [zoning boards of appeal] with responsibility for rulings on subjects that are beyond their ordinary competence," *id.* at 509, 567 A.2d at 193; and "that a declaratory judgment action is a legitimate procedure for directly testing the validity of zoning enactments beyond the thirty-day period prescribed by [RSA 677:]4." *Id.; see also id.* at 510–12, 567 A.2d at 193–95. Thus reversing in part, he observed "the justification for preserving both [RSA 677:]4 and [the declaratory judgment statute] as procedures for direct challenge to zoning enactments is a matter for consideration by the legislature." *Id.* at 513, 567 A.2d at 195.

In addressing the timeliness issue in this case, we "are guided ... by principles of statutory interpretation that are well settled in New Hampshire law. We begin by considering the words of the statute, and on the assumption 'that all words in [the] statute were meant to be given meaning in the interpretation of the statute.'" *Kenerson v. FDIC,* 44 F.3d 19, 23 (1st Cir.1995) (quoting *Town of Wolfeboro v. Smith,* 131 N.H. 449, 452–53, 556 A.2d 755, 756–57 [1989]); *see also In re Village Bank & Trust Co.,* 124 N.H. 492, 495, 471 A.2d 1187, 1188–89 (1984) (courts should read statutes to avoid rendering any word or phrase thereof mere surplusage); *Blue Mountain Forest Ass'n v. Town of Croydon,* 117 N.H. 365, 372, 373 A.2d 1313, 1317 (1977) (same). Thus, when the New Hampshire Supreme Court spoke in *Blue Jay Realty,* 132 N.H. at 195, 567 A.2d at 195, of "preserving both § 4 and [the declaratory judgment remedy] as procedures for direct challenge to zoning enactments," we understand it to mean that the limitations expressed in RSA 677:2 and :4 retain some validity to foreclose some class of cases notwithstanding the vitality of the declaratory judgment remedy which is not confined to these statutory limitations.[5] The question is, therefore, into which class of cases does the present action fall?

The City advances but a single lame argument in its attempt to distinguish *Blue Jay Realty.* It argues that the action of the City Council here in enacting conditional use zoning is somehow quasi-judicial as opposed to "legislative" and, therefore, the short statute of limitations applies. Rising to the bait, the Developers argue equally strenuously that the enactment of the Special Overlay District here was quintessentially "legislative" in nature. Both arguments are beside the point since, as the New Hampshire Supreme Court held in *Blue Jay Realty* itself, "the ... applicability to such legislative acts of what is now [RSA 677:4] was clearly settled in *Scott v. Davis* [94 N.H. 35, 37, 45 A.2d 654, 655 (1946)]." *Blue Jay Realty,* 132 N.H. at 508, 567 A.2d at 192.

As we read *Blue Jay Realty,* however, the question it poses for resolution is not an

---

5. This reading is supported by reference to 1 PETER J. LOUGHLIN, NEW HAMPSHIRE MUN.PRAC.: LAND USE PLANNING AND ZONING § 3.03 (1992) which speaks of the New Hampshire Supreme Court in *Blue Jay Realty* "refining"—not overruling—the position it had taken just a year earlier in *Town of Auburn v. McEvoy,* 131 N.H. 383, 553 A.2d 317 (1988) (Souter, J.). *See also* 15 PETER J. LOUGHLIN, NEW HAMPSHIRE PRAC.: LAND USE, PLANNING AND ZONING § 26.03 (2d ed. 1992) (same).

exploration of the capacity in which the City Council was acting. The question, rather, is whether those who are actively participating in the legislative process and have actual notice of the ordinance in question [6] are required promptly to exhaust the administrative remedy set forth in RSA 677:2 before having recourse to the courts under RSA 677:4 or the New Hampshire declaratory judgment statute.[7] This, in turn, depends on whether the issue to be reheard presents a question of law or a question of administrative discretion. In New Hampshire as elsewhere, "when the issue ... involves a question of law rather than a question of the exercise of administrative discretion, administrative remedies need not always be exhausted." *Id.* at 509, 567 A.2d at 193 (quoting *Bourgeois v. Town of Bedford,* 120 N.H. 145, 149, 412 A.2d 1021, 1024 [1980]). Thus, where "the charges of invalidity ... require determinations of statutory and constitutional law, not customarily passed upon by city councils, the rehearing requirement does not apply, and failure to pursue it is no bar to direct review." *Id.* at 509, 567 A.2d at 193.

The question remains whether in this case the fact specific character of the reasonable nexus determination is an issue of administrative discretion, one passed upon by a city council, rather than an issue of law. We recognize that this determination—really one of law application to specific facts—does not fit squarely in either an "administrative discretion" or "issue of law" category. Still, while the question is a close one, we conclude that here what is essentially a challenge to the **amount** of the payment to be made to compensate the City for the impact of increased density zoning is fact specific enough and judgmental enough to be assimilated to a discretion issue. The City, therefore, had first to be challenged, if at all, pursuant to RSA 677:2 through a prompt petition for rehearing before the city council.

*Blue Jay Realty,* it must be remembered, involved an appeal from the dismissal of the plaintiff's declaratory judgment action. Thus the New Hampshire Supreme Court there took the complaint on its face and canvassed the full array of the plaintiff's theories to see if any ought be allowed to proceed.

> Among those theories [were] challenges to the validity of the amendments as inconsistent with the city's master plan; as lacking support in objective criteria; as ultra vires; as intended to halt development; as directed against Blue Jay; as frustrating reasonable, investment-backed expectations; and as denying federal due process and State and federal equal protection.

*Blue Jay Realty,* 132 N.H. at 504, 567 A.2d at 190.

This panoply of legal claims is a far cry from the case before this Court. Here there is no attack at all on the Special Use Zoning District itself. Indeed, a close reading of the ordinance in question reveals that it was designed to take effect once "all documentation required by this ordinance including adequate surety for all obligations of the applicant has been approved by the City Attorney." It is thus apparent that the City Council contemplated an effective zoning ordinance as of the completion of the review by the City Attorney notwithstanding the executory nature of certain of the Developers' obligations, specifically those payment obligations evidenced by the promissory note. For all that appears from the present record, therefore, the ordinance establishing the Special Overlay District remains in full force and effect, the Developers and their grantees, if any, potentially able to reap the benefit of the increased density use there permitted. Nor does this case present any legal challenge to the concept of conditional use zoning on either constitutional or statutory

---

**6.** Like the Developers here, the landowner in *Blue Jay Realty* was intimately involved in negotiations with the local New Hampshire municipality over subdivision approval and in seeking to forestall the restrictive zoning amendment it ultimately challenged in court. *Blue Jay Realty,* 132 N.H. at 503–04, 567 A.2d at 189–90. To avoid any due process concerns, we make explicit a point implicit in *Blue Jay Realty,* viz. our analysis proceeds on the express understanding that it is

limited to the Developers here who had actual and immediate notice of each step in the enactment of the ordinance in question.

**7.** Given the plain meaning of the words in RSA 677:2 and :4, *Black Bear Lodge v. Trillium Corp.,* 136 N.H. 635, 637–38, 620 A.2d 428, 429–30 (1993), as to those cases where § 2 cuts off direct review, collateral attacks are likewise extinguished.

grounds. Indeed, as the Developers are at pains to point out, conditional use zoning continues to be upheld as constitutional, provided that "the city [makes] some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Dolan v. City of Tigard,* —— U.S. ——, ——–——, 114 S.Ct. 2309, 2319–20, 129 L.Ed.2d 304 (1994).

Here, in distinct contrast to *Blue Jay Realty,* the question for decision is essentially fact-specific, necessitating an understanding of and grounding in the mores and needs of the City. It involved the costs of the capital improvements that the City would be required to undertake to cope with the impact of the proposed project in light of its effect on the amount of low-income housing stock throughout the City. This is properly a matter to be considered by the City Council.[8] Indeed, no one argues that increased density zoning has **no** impact on the City.[9] Rather, the question unanswerable on this record is the **amount** of payment that would, in fact, bear a reasonable nexus to the burden shouldered by the City. We hold that this question is, in the circumstances of this case, one for the City Council in the first instance.

One need not limn the outer reaches of the class of cases subject to RSA 677:2 and :4 to rule, as we do here, that the so-called "illegality" defense set up by the Developers in this action was untimely under the controlling New Hampshire statutory law. It is precisely these types of community- and fact-specific determinations that are committed in the first instance to bodies such as the City Council. If, as the Developers now say, the amount of the promissory note bore no rational nexus to the burdens the development would impose upon the City, the rehearing requirement of RSA 677:2 afforded the appropriate vehicle through which the defect was expected to be called to the attention of

the public body charged with discerning and enforcing the required nexus. Moreover, if after being properly advised of the flaws in its analysis, the City Council had done nothing on rehearing, a full appeal lay to the New Hampshire Superior Court pursuant to RSA 677:4. Having done nothing, thereby depriving the City Council of the chance to address its error, much less correct it, the Developers will not now be heard to challenge their payment obligation upon the narrow ground they advance here.

We hold that the matters encompassed in the so-called illegality defense raised in this case are properly subject to the short statutes of limitation contained in RSA 677:2 and :4. Since the Developers did not raise these matters in a timely fashion, they waived this defense.

Accordingly, the judgment must be reversed and the case remanded to the district court for further proceedings in accordance with this opinion.

***It is so ordered.***

---

8. We recognize, as the district court properly found, that the City Council here was derelict in its duty and "set out to exact as high a payment as possible from the developers without regard to the actual impact that the development would have on low-income housing." Trial Tr., Vol. 3 (Feb. 10, 1994) at 13–14. Moreover, it appears that the Developers acquiesced in this exaction believing that they could still make the development pay, and thereafter proceeded in good

faith, defaulting only when the real estate market went sour. The question here, however, is the proper interpretation of New Hampshire statutory and case law. These equitable considerations shed little light on the intended reach of those statutes of limitation.

9. We note that the Developers do not here seek to recover the $800,000 already paid.