2004 ME 115

### TOWN OF LEVANT

v.

### Laurie M. SEYMOUR.

Supreme Judicial Court of Maine.

Argued: Feb. 12, 2004.

Decided: Aug. 31, 2004.

---

Thomas A. Russell (orally), Farrell, Rosenblatt & Russell, Bangor, for plaintiff.

Robert E. Miller (orally), Old Town, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Laurie M. Seymour appeals from a judgment entered in the District Court (Newport, *MacMichael, J.*) finding that she committed land use violations. Specifically, the court found that Seymour violated certain sections of the land use ordinance of the Town of Levant. Seymour argues that the District Court did not have subject matter jurisdiction. She further contends that the court erred in concluding that her gravel pit expansion was not grandfathered and that excavation of the gravel pit was in violation of setback requirements. She also appeals the imposition of penalties and attorney fees. We affirm the judgment.

## I. BACKGROUND AND PROCEDURE

[¶ 2] Seymour is the owner of real estate consisting of approximately 140 acres in Levant. The land is divided by the Tay Road, which runs east and west. Seymour inherited the land from her parents, who operated a gravel pit on the south side of the Tay Road for a number of years. Part of the land on the north side of the Tay Road was wooded, and part had been used by Seymour's father for corn cultivation.

[¶ 3] In 2000, Seymour obtained permission from the Town to subdivide the property on the north side of the Tay Road into five house lots and a reserved portion, and she sold one of the lots. In 2002, Seymour began excavating a gravel pit on the reserved portion, and she also stripped loam from it.

[¶ 4] After visiting the new gravel pit several times, Levant's Code Enforcement Officer (CEO) issued a stop work order to Seymour on June 26, 2002. The stop work order directed her to cease all operations north of the Tay Road "until this situation is resolved by a site plan review hearing with the Levant Planning Board." The order stated that it was based on violations of section 1220(C) [1] and (D)(6) [2] of the land use ordinance. It alleged that Seymour had removed sand or gravel in excess of 1000 cubic yards without Planning Board approval and had extracted material below the seasonal high water table and within 150 feet of a property line. Seymour appealed the stop work order to the Levant Board of Appeals on the ground that her

---

1. The pertinent portion of section 1220(C) of the Town of Levant Land Use Ordinance states:

 C. Review and permit required.
 All excavation, removal, or fill in excess of 200 cubic yards and up to 1000 cubic yards in a calendar year shall require a CEO permit before the activity is commenced; greater than 1000 cubic yards in a calendar year shall require Planning Board approval before the activity is commenced. Site Plan approval is only required once as long as the approved plan is followed.
 Levant, Me., Land Use Ordinance § 1220(C) (June 22, 1996).

2. Section 1220(D)(6) of the Town of Levant Land Use Ordinance states:

 D. Mineral exploration activities.
 The following requirements shall apply to mineral exploration activities:
 . . . .

6. Extraction shall be prohibited below the average seasonal high water table. No ditches, trenches, pumping or other methods shall be used to lower the water table or permit more gravel extraction than could occur under normal conditions. Extraction operations shall not be permitted within one hundred fifty feet (150') of any property line, without written permission of the owner of such adjacent property. In no event shall they be permitted closer than twenty-five feet (25') to any property line, unless there is another mineral extraction operation on the other side of the property line in question. The distance may not be reduced to less than twenty-five feet (25') from a cemetery.
Levant, Me., Land Use Ordinance § 1220(D)(6) (June 22, 1996).

property was grandfathered, and therefore, the land use ordinance was inapplicable.

[¶ 5] On July 12, 2002, the CEO issued a second stop work order, which alleged that Seymour had excavated below road level within 150 feet of a road, in violation of section 1220(D)(10)[3] of the land use ordinance. Seymour also appealed the second stop work order to the Levant Board of Appeals.

[¶ 6] Before the Board of Appeals held a hearing, the Town filed a complaint against Seymour in the District Court pursuant to M.R. Civ. P. 80K. The complaint alleged that Seymour had violated section 1220(C), (D)(6) and (D)(10) of the land use ordinance and requested preliminary and permanent injunctions, penalties, and attorney fees. The court issued a temporary restraining order on July 23, 2002.

[¶ 7] The Board of Appeals held a hearing and issued its decision on August 7, 2002. It set aside the CEO's orders, finding that the CEO had failed to find facts before issuing the stop work orders. The Town appealed the Board of Appeals decision to the Superior Court.

[¶ 8] A trial in the District Court on the Rule 80K complaint began on December 10, 2002, and the court denied Seymour's request to continue the District Court proceedings until the Superior Court issued a decision in the Town's appeal from the Board of Appeals. The Rule 80K trial in the District Court required two trial days, and the second was not held until May 6, 2003.

[¶ 9] The primary issue at the District Court trial was whether the excavation of a gravel pit north of the Tay Road was a grandfathered use, that is, an existing nonconforming use that lawfully existed prior to the enactment of the land use ordinance in 1996. The District Court issued its findings and judgment on June 17, 2003. It found that the excavation north of the Tay Road was not an existing use but was a new gravel pit that required Planning Board approval. The court also found that Seymour had excavated within 150 feet of the property lines of two neighbors and within 150 feet of the Tay Road right of way. Seymour was enjoined from excavating within 150 feet of the neighbors' property lines and the Tay Road and from removing more than 1000 cubic yards in a calendar year without Planning Board approval. The court ordered Seymour to fill, grade, and restore loam to the property. In addition, the court assessed penalties against Seymour totaling $1800, and it ordered her to pay attorney fees, costs, and expert witness fees to the Town in excess of $10,000.

[¶ 10] Several days before the District Court judgment was issued, the Superior Court decided the Town's appeal of the Board of Appeals decision. The Superior Court concluded that the Board should have conducted a de novo hearing. Because it had not done so, the court vacated the Board's decision and remanded the matter to the Board for further proceedings.

---

**3.** The pertinent portion of section 1220(D)(10) of the Town of Levant Land Use Ordinance states:

 D. Mineral exploration activities.
 The following requirements shall apply to mineral exploration activities:
 . . . .
 10. ... Excavation may not occur below road level within one hundred fifty feet (150′) of a road or right-of-way except that excavation below road level may occur within one hundred fifty feet (150′) of a private right-of-way with written permission of the owner of the right-of-way.
Levant, Me., Land Use Ordinance § 1220(D)(10) (June 22, 1996).

[¶ 11] Seymour appealed the District Court judgment and requested that we stay the appeal, pending a decision of the Board of Appeals on remand, or that we dismiss the District Court judgment for lack of subject matter jurisdiction.

## II. DISCUSSION

### A. Exercise of Jurisdiction

[¶ 12] Although Seymour argues that the District Court lacked subject matter jurisdiction, the substance of her argument is that the District Court should not have exercised its jurisdiction. There is no question that the Legislature has given the District Court subject matter jurisdiction to grant equitable relief and impose penalties for violations of a local environmental ordinance. 4 M.R.S.A. § 152(6–A) (Supp. 2003). The Town's complaint against Seymour sought equitable relief and penalties for the violation of its land use ordinance. The complaint was brought pursuant to M.R. Civ. P. 80K, which sets forth the procedure for an action in the District Court to enforce land use ordinances. To support her contention that the District Court should have declined to exercise its jurisdiction, Seymour relies on the doctrines of exhaustion of administrative remedies, primary jurisdiction, and ripeness.

[¶ 13] The doctrine of exhaustion of administrative remedies requires a party who seeks an administrative remedy or who challenges an administrative action to pursue that remedy or challenge to a conclusion before the administrative agency prior to initiating action in the courts. *Levesque v. Town of Eliot*, 448 A.2d 876, 878 (Me.1982). Failure to exhaust administrative remedies can be a defense. *See State ex rel. Brennan v. R.D. Realty Corp.*, 349 A.2d 201, 206 (Me.1975). However, it is not a defense that can be raised for the first time on appeal. Although Seymour moved the District Court for a stay until the litigation in Superior Court was resolved, her argument was based on judicial economy and not on a failure to exhaust administrative remedies. Seymour failed to preserve this defense by not raising it in the District Court, and we will not consider it here.

[¶ 14] The doctrine of primary jurisdiction determines whether a court should refrain from deciding an issue that an "agency with jurisdiction over the matter has not yet considered." *Levesque*, 448 A.2d at 878. This is particularly true when the administrative agency has exclusive jurisdiction. Although the Levant Board of Appeals has the authority to determine the primary disputed issue— that is, whether Seymour's land north of the Tay Road is grandfathered—its jurisdiction is not exclusive. Seymour has not called our attention to any statutory or ordinance provision giving the Board of Appeals exclusive jurisdiction.

[¶ 15] The District Court obtained the authority to determine whether Seymour violated the Town's land use ordinance once its jurisdiction was invoked by the filing of the Rule 80K action, and because Seymour raised the grandfathered status of the land north of the Tay Road as a defense, the court had the power to decide its status. Furthermore, not only is the jurisdiction of the Board of Appeals not exclusive, it does not have the enforcement powers of the District Court, that is, the ability to issue an injunction and impose a penalty. The District Court was not required, on the grounds of primary jurisdiction, to wait until the administrative appeal was finally concluded before it could proceed with the enforcement action. The two proceedings are separate and distinct. *Town of Boothbay v. Jenness*, 2003 ME 50, ¶ 20 n. 4, 822 A.2d 1169, 1175.

[¶ 16] The ripeness doctrine precludes a court, when asked to intervene in

the actions of an administrative body, from doing so unless the matter has achieved, through the administrative tribunal, a stage at which it is ripe for judicial consideration. *See Lewiston, Greene & Monmouth Tel. Co. v. New England Tel. & Tel. Co.*, 299 A.2d 895, 907–08 (Me.1973). The ripeness doctrine is not implicated here because the District Court was not intervening in the actions of an administrative body. The matter was ripe for judicial consideration as soon as the Town concluded that Seymour had violated the ordinance. Enforcement of the stop work orders was ripe without action by the Board of Appeals. Had the Board acted first and decided that Seymour had violated the land use ordinance, the District Court enforcement action would have been assisted by that determination. Likewise, if the Board had decided that Seymour's lot was grandfathered, that determination could have been placed before the District Court. Either way the District Court's work might have been narrowed, but that does not mean that the case was not ripe for a decision in the District Court. The lack of a final decision by the Board of Appeals only means that the CEO's interpretation of the ordinance is not res judicata. *See Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me.1991).

[¶ 17] We conclude that the District Court did not exceed the bounds of its discretion by exercising jurisdiction over the Rule 80K complaint brought by the Town against Seymour, and we decline to stay Seymour's appeal.

### B. Grandfathered Use

[¶ 18] The court concluded that Seymour violated three provisions of the Town of Levant Land Use Ordinance: section 1220(C), (D)(6) and (D)(10). Specifically, it found that during 2002, Seymour excavated earthen materials from the land north of the Tay Road (1) of over 1000 cubic yards without prior approval of the Planning Board; (2) within 150 feet of the property lines of two of her neighbors; and (3) below the level of the Tay Road and within 150 feet of its right of way. Seymour does not dispute these findings.

[¶ 19] Seymour's principal defense was that excavation of gravel and loam from her land north of the Tay Road is an existing nonconforming grandfathered use, and for this reason, Planning Board approval was not required. It was Seymour's burden to prove the status of the new gravel pit as an existing nonconforming use.[4] *Town of Orono v. LaPointe*, 1997 ME 185, ¶ 13, 698 A.2d 1059, 1062.

[¶ 20] The Levant ordinance has several provisions relevant to Seymour's defense. It defines a "legally existing (grandfathered) non-conforming lot, structure, sign, or use" as one that "lawfully existed immediately prior to the enactment of this Ordinance ... and which, as a result of the enactment[,] ... fails to comply with any of the requirements of this Ordinance." Levant, Me., Land Use Ordinance § 910 (June 26, 2000). With respect to gravel pits in particular, it states: "All existing gravel pits at the time of the adoption of the ordinance do not need Planning Board [a]pproval to continue operation." Levant, Me., Land Use Ordinance § 1220(A) (June 22, 1996). Section 1220(A) also states: "Existing gravel pits may continue to operate as long as the extraction does not make the pit more non conforming."

---

**4.** The ordinance places the burden of proving a legal nonconforming use on the owner. "The burden of proof establishing that any non-conformity is a legal non-conformity shall, in all cases, be upon the owner of such non-conformity and not upon the Town of Levant." Levant, Me., Land Use Ordinance § 920(C) (June 26, 2000).

 [¶ 21] The court concluded that Seymour had two gravel pits, one south of the Tay Road and one on the north side, and the gravel pit on the north side did not exist at the time of enactment of the land use ordinance. The court also found that there was "a clear delineation" between the two gravel pits and that the one on the north was not part of the one on the south nor was the north gravel pit an enlargement of the south pit. Therefore, the gravel pit north of the Tay Road was not an existing grandfathered nonconforming use. We review a trial court's factual findings for clear error, but we review its interpretation of the ordinance de novo.

[¶ 22] We have said that a use is not grandfathered unless the owner or user demonstrates that the use existed prior to the enactment of the ordinance that restricts or prohibits the use and that the use was "actual and substantial." *Seven Islands Land Co. v. Me. Land Use Reg. Comm'n*, 450 A.2d 475, 481 (Me.1982) (holding that preparation for a nonconforming use is not actual and substantial use). The uncontroverted evidence here was that the historic use of the land north of the Tay Road was corn cultivation and that no gravel pit existed on the north side prior to 1996 when the ordinance was enacted.

[¶ 23] However, Seymour contends that she has only one gravel pit, which is located on both sides of the Tay Road. In other words, according to Seymour, the pit on the north side is merely an extension or enlargement of the gravel pit on the south. She argues that this position is supported by the doctrine of diminishing assets. She urges that we recognize the doctrine and apply it to her situation.

[¶ 24] The doctrine of diminishing assets is based on the acknowledgment that gravel mining uses the land as a "diminishing asset." *Syracuse Aggregate Corp. v.*

*Weise*, 51 N.Y.2d 278, 434 N.Y.S.2d 150, 414 N.E.2d 651, 654–55 (1980).

It is because of the unique realities of gravel mining that ... courts have been nearly unanimous in holding that quarrying, as a nonconforming use, cannot be limited to the land actually excavated at the time of enactment of the restrictive ordinance because to do so would, in effect, deprive the landowner of his use of the property as a quarry.

*Id.* at 655. The Washington Supreme Court has described the doctrine as extending "the boundaries of the nonconforming mining use to the entire parcel intended to be mined at the time the zoning ordinance was promulgated." *City of Univ. Place v. McGuire*, 144 Wash.2d 640, 30 P.3d 453, 455 (2001).

[¶ 25] The doctrine of diminishing assets is usually limited to the boundaries of the land where the use was initiated before the enactment of the land use ordinance. *See Stephan & Sons v. Municipality of Anchorage Zoning Bd. of Exam'rs & Appeals*, 685 P.2d 98, 102 (Alaska 1984). The excavator must show by objective evidence that the land where the excavator wants to extend excavation was clearly intended to be excavated before the ordinance became effective. *See Town of Wolfeboro v. Smith*, 131 N.H. 449, 556 A.2d 755, 759 (1989). Further, where more than one lot is owned by the excavator prior to the ordinance, expansion is not allowed to a lot that had not previously been a part of the excavation operation. *Hansen Bros. Enters., Inc. v. Bd. of Supervisors of Nev. County*, 12 Cal.4th 533, 48 Cal.Rptr.2d 778, 907 P.2d 1324, 1340 (1996).

[¶ 26] Even if we were to adopt the doctrine of diminishing assets, it would not benefit Seymour. Pursuant to that doctrine she would have had to prove, by objective evidence, that before the ordinance became effective, the land north of

the Tay Road was intended to be excavated and had previously been a part of the excavation operation. The evidence was that Seymour became the owner of the land on both sides of the Tay Road in 2000 and in that same year she received permission from the Planning Board to subdivide the north side into five house lots and one reserved portion. The portion of the north side that she began excavating in 2001 had been a cornfield since before Seymour's father died in 1994. Seymour testified that her father had always intended to dig gravel north of the Tay Road and that in the 1980s he had an excavator make test borings on the north and south sides to determine where the gravel was. Seymour's statement that her father always intended to dig gravel on the north side is not objective evidence. Evidence of test borings done in the 1980s is not a sufficient indication that the north side was part of the excavation operation in light of the fact that no excavation activity took place there until 2001. Therefore, we need not decide whether to adopt the doctrine of diminishing assets because Seymour has not shown that the doctrine is applicable to her situation.

[¶ 27] Because Seymour's gravel pit north of the Tay Road was not an existing nonconforming use in 1996, she was required to seek Planning Board approval for her gravel pit, which she did not do. Therefore, the court did not err in finding that she violated section 1220(C) of the land use ordinance.

[¶ 28] The court further concluded that even if the new gravel pit on the north side was an existing gravel pit, Seymour's excavation activities within 150 feet of the neighbors' property lines, as well as the excavation within 150 feet of the Tay Road and below its level, were all extractions that rendered the pit more nonconforming and, therefore, in violation of section 1220(D)(6) and (D)(10) of the ordinance. The evidence was sufficient for this finding.

C. Penalties and Attorney Fees

[¶ 29] Upon finding that Seymour violated the ordinance, the court assessed penalties and ordered Seymour to pay attorney fees, costs, and expert witness fees to the Town. The court determined the amount of penalties as follows: $750 for excavating without a permit, and $1050 for the three setback violations, for a total of $1800. The court ordered attorney fees in the amount of $8338, expert witness fess of $1886.50, and costs of $196.79. Seymour argues that the penalties and attorney fees are excessive and that special circumstances justify lesser amounts. Our review of civil penalties and attorney fees is limited to determining if the court exceeded the bounds of its discretion. *See Town of Ogunquit v. McGarva*, 570 A.2d 320, 321 (Me.1990); *Town of Freeport v. Ocean Farms of Me., Inc.*, 633 A.2d 396, 399 (Me.1993).

[¶ 30] Section 1440 of the Town of Levant Land Use Ordinance states: "Any person ... who orders or conducts any activity in violation of this Ordinance shall be penalized in accordance with Title 30–A, M.R.S.A., Section 4452." That statute allows for the assessment of civil penalties and provides that the minimum penalty for "land use activity without a required permit is $100, and the maximum penalty is $2,500." 30–A M.R.S.A § 4452(3)(A) (1996). The minimum penalty for specific violations of a land use ordinance is $100 and the maximum is $2500. *Id.* § 4452(3)(B). The statute also lists several factors for a court to consider in setting the penalty:

(1) Prior violations by the same party;

(2) The degree of environmental damage that cannot be abated or corrected; (3)

The extent to which the violation continued following a municipal order to stop; and (4) The extent to which the municipality contributed to the violation by providing the violator with incorrect information or by failing to take timely action.

30–A M.R.S.A. § 4452(3)(E) (1996).

 [¶ 31] Seymour argues that the court should have considered that (1) there were no claims of prior violations or environmental damage; (2) she stopped the excavation after the stop work orders; (3) the CEO did not give her notice prior to the June 26 stop work order as contemplated by section 1420 of the land use ordinance; and (4) the first stop work order had to be clarified by the issuance of the second. The court specifically found that Seymour continued to violate the ordinance after the first stop work order and that finding is supported by the record. Furthermore, Seymour's argument that she was entitled to a written notice before the CEO could issue a stop work order is not supported by the ordinance. It is obvious that the court took the factor regarding prior violations or environmental damage into consideration because the civil penalty was relatively modest in comparison to the maximum penalty authorized by the statute. *See* 30–A M.R.S.A. § 4452(3)(A) and (B). The court did not exceed its discretion in imposing the civil penalties.

 [¶ 32] Seymour contends that there were "special circumstances" that the court should have taken into account in determining the amount of attorney fees assessed against her. The relevant statute states:

If the municipality is the prevailing party, the municipality must be awarded reasonable attorney fees, expert witness fees and costs, unless the court finds that special circumstances make the award of these fees and costs unjust. If the defendant is the prevailing party, the defendant may be awarded reasonable attorney fees, expert witness fees and costs as provided by court rule.

30–A M.R.S.A. § 4452(3)(D) (1996). The court awarded the Town the amount of attorney fees it requested and which was set forth in its attorney's affidavit and detailed time records. Seymour argues that because the Town did not pursue two claims against her included in the Rule 80K complaint, the Town was not a prevailing party and no fees should have been awarded to the Town. The Town, however, made clear at the beginning of the trial which violations it was and was not pursuing, and the court was able to assess the lack of attorney time on the unpursued claims. The Town prevailed on the remaining claims, and the court did not exceed the bounds of its discretion in awarding the amount of fees it did.

The entry is:

Judgment affirmed.