2007 ME 45

## QUILAND, INC.

v.

## PUBLIC UTILITIES COMMISSION.

Supreme Judicial Court of Maine.

Argued: Feb. 13, 2007.
Decided: March 22, 2007.

See also 905 A.2d 806.

William S. Harwood (orally), Nora R. Healy, Verrill Dana, L.L.P., Portland, for appellant.

Joanne B. Steneck, General Counsel, Andrew S. Hagler, Staff Attorney (orally), Maine Public Utilities Commission, Augusta, for appellee.

Patrick J. Scully (orally), Shana Cook Mueller, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for K.K.W.W.D., appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] This matter is before us on appeal by Quiland, Inc., from an order of the Public Utilities Commission that: (1) upheld an individual metering requirement

applied to Quiland's seasonal home development by the Kennebunk, Kennebunkport, and Wells Water District (the District); and (2) ordered the District to modify the methodology by which it calculates and assesses its System Development Charge (SDC), 35–A M.R.S. § 6107 (2006), as applied to Quiland "so that the charge more accurately reflects the expected usage characteristics of its customers." A proceeding addressing that modification of the SDC is ongoing before the Commission.

[¶ 2] Quiland has appealed only the Commission's approval of the individual metering requirement, arguing that: (1) the Commission erred in not requiring the District to establish that the individual metering requirement is cost-effective; (2) the Commission's order was not supported by sufficient findings; and (3) the order was not supported by substantial evidence in the record. Because the economic issues central to Quiland's challenge to the individual metering requirement cannot be determined without resolution of the SDC issue, Quiland's appeal is premature. In addition, the findings on the economic issues are insufficiently related to statutory criteria. Accordingly, we dismiss and remand for final determination of all issues by the Commission after the SDC proceeding is completed.

## I. CASE HISTORY

[¶ 3] Quiland is a real estate development corporation. It is currently constructing a 247–unit complex of stick-built, one-and-two-bedroom seasonal cottages that are being sold as individual condominiums. The cottage complex, called "Summer Village," is located in Wells.

[¶ 4] This development has already been before us to address assessment of sewerage charges. In *Quiland, Inc. v. Wells Sanitary District,* 2006 ME 113, 905 A.2d 806 (*Quiland I* ), Quiland appealed a Superior Court decision affirming the Wells Sanitary District's determination that the cottages would be deemed residences for purposes of assessing usage and impact fees, and that the cottages could be billed individually, rather than as a group. *Id.* ¶ 1, 905 A.2d at 807. Quiland argued, inter alia, that the Sanitary District abused its discretion and violated Quiland's constitutional equal protection rights by imposing the fees and the individual billing requirement, because the Village should have been assessed and billed as if it were made up of park model trailers. *Id.* ¶¶ 17, 19, 24, 905 A.2d at 810–12.

[¶ 5] In affirming the Superior Court's decision, we determined that the Sanitary District did not err by categorizing the cottages as residences because the cottages were more akin to stick-built residences than mobile trailers. *Id.* ¶ 21, 905 A.2d at 811. We also held that the Sanitary District did not err in billing the cottages individually, rather than as one unit. *Id.* ¶ 25, 905 A.2d at 812–13. We noted that Quiland was marketing the cottages as condominiums, which require separate treatment pursuant to the Maine Condominium Act, 33 M.R.S. § 1601–105 (2006). *Id.* ¶ 25 & n. 4, 905 A.2d at 812–13.

[¶ 6] This proceeding, relating to water service, is subject to laws that are distinct from those governing the sewerage service addressed in *Quiland I.* In 2004, prior to construction, Quiland applied to the District for water service for Summer Village. Quiland and the District negotiated for several months over whether Quiland could install a single, master water meter for the entire Village, rather than individual meters for each cottage. In December 2004, the District informed Quiland that it would have to install individual meters for the Village's 247 cottages in accordance

with its 1990 meter policy and that each cottage would be assessed a $1318 SDC.

[¶ 7] In February 2005, Quiland filed a complaint with the Consumer Assistance Division (the CAD) of the Commission, challenging the District's decision to require the installation of individual meters rather than a single, master meter. The CAD affirmed the District's application of the meter policy. Quiland then appealed the CAD's decision to the full Commission.

[¶ 8] A hearing examiner presided at the Commission hearing on Quiland's appeal. After the hearing, the hearing examiner filed a report and proposed decision. The hearing examiner determined that the District had engaged in "an unreasonable act and practice when it required individual metering for each cottage" and that the District should "modify the methodology by which it calculates and assesses" its SDC.

[¶ 9] In its order on the appeal, the Commission disagreed with the hearing examiner and found that the District had not acted unreasonably in requiring the individual metering for each cottage. The Commission held that the meter policy could be applied to seasonal cottage complexes, where each unit is individually owned. The Commission found that the meter policy promotes conservation because it encourages owners to decrease water usage and to install water-efficient devices, and that the District had attempted to consistently apply the meter policy where the incentive to conserve existed, despite a few mistakes in the past.

[¶ 10] The Commission also held that the District was not required to perform a cost-benefit analysis with respect to individual developments because imposing such a requirement would not be practical, and because the Commission gives considerable discretion to the District's decision to implement its policies. The Commission noted that it may invalidate an individual metering requirement if the costs clearly outweigh the benefits, but that it did not find those factors present in this case.

[¶ 11] The Commission supported its decision by finding that it was reasonable for the District to require individual meters for the seasonal cottages, where the cottages would be used during the District's peak water-demand period, mainly the summer months. The District's water demand is 2,000,000 gallons-per-day in the off-season, increasing up to 6,900,000 gallons-per-day in mid-summer. Finally, the Commission stated, "even though seasonal use brings with it the added cost of annually removing and installing the meters, the evidence in this case does not suggest that cost to be so great that the practice of individually metering individually owned premises should not be extended to seasonal dwellings."

[¶ 12] Turning to the SDC, the Commission found that there was a significant and unreasonable disparity between the SDC that would be assessed against the Village if individual meters were installed, and the SDC that would be assessed if a single meter were installed.[1] Therefore, the Commission ordered the District to recalculate the SDC assessment, gave the District thirty days to address the issue, and decided to open a separate investigation as to whether the new assessment would be just and reasonable. The revised SDC will apply retroactively to Quiland. Because the Commission's investigation is ongoing, a new SDC has not been calculated.

1. The District recognized the discrepancy in the price between 247 individual meters and one master meter, and suggested in its brief to the Commission that it should adjust the design of its SDC to try to eliminate the discrepancy.

[¶ 13] Subsequent to the Commission's order, Quiland filed a motion for reconsideration, rearguing its essential points and requesting findings concerning the cost-effectiveness of individual metering at seasonal multi-unit complexes. The Commission took no action, and the motion was deemed denied. Quiland then brought this appeal.

## II. LEGAL ANALYSIS

[¶ 14] Several statutes governing Commission decision-making appear relevant to the issue of the reasonableness of the individual-metering policy.

— Title 35–A M.R.S. § 301(2) (2006) directs that rates and charges for any public utility "shall be just and reasonable."

— Title 35–A M.R.S. § 301(3) (2006) states that "[e]very unjust or unreasonable charge for public utility service is prohibited."

— Title 35–A M.R.S. § 1303(1)(A) (2006) authorizes the Commission to investigate where it believes that "[a] rate or charge is unjust or unreasonable."

— Title 35–A M.R.S. § 1306(1) (2006) enables the Commission to change rates, tolls, charges, or schedules when it determines after a public hearing that such rates, tolls, charges or schedules "are unjust, unreasonable, insufficient or unjustly discriminatory."

— Title 35–A M.R.S. § 6105(2) (2006) requires that water district rates and charges be "just and reasonable."

— Title 35–A M.R.S. § 6107 governs SDCs and requires that they be "just and reasonable."

■ [¶ 15] Surprisingly, not one of these statutes, or any other statute, is cited in the Commission's discussion of individual metering and in support of its conclusion that the meter policy is "not unreasonable." Without an indication of the statute and standards upon which the Commission relied in making its decision, it is impossible to determine how the Commission reached its "not unreasonable" conclusion, before it resolved the appropriate SDC, after completion of its ongoing investigation. The Commission's findings are not tied to any specific statutory standards. Without such findings and without determination of the appropriate SDC, we have no capacity to engage in a reasoned appellate review of the Commission's decision-making relating to the meter policy.

■ [¶ 16] With few exceptions, we will only reach the merits of appeals from final rulings of administrative agencies. *See Carroll v. Town of Rockport,* 2003 ME 135, ¶ 16, 837 A.2d 148, 154. "[F]inal administrative action is a decision that fully decides and disposes of the entire matter pending before the … administrative agency, leaving no questions for the future consideration and judgment of the … administrative agency." *Id.*; *cf. E. Perry Iron & Metal Co., Inc. v. City of Portland,* 2006 ME 52, ¶ 5, 896 A.2d 956, 958. Furthermore, we avoid ruling, on appeal, on matters committed by law to the decision-making authority of an administrative agency, before the administrative agency has had an opportunity to review and reach a decision on the merits of the matter at issue. *Christian Fellowship & Renewal Ctr. v. Town of Limington,* 2006 ME 44, ¶ 40, 896 A.2d 287, 298.

[¶ 17] The Commission rejected Quiland's argument that the meter policy is invalid as a matter of law. In its response to Quiland's argument that the cost of the District's meter policy as applied to the Village far outweighed the potential benefit of reduced water consumption, the Commission's decision is not so clear. Although the Commission found that the meter policy could be applied to the Village, it

ordered the District to readdress its SDC calculations because of the disparity in its estimated SDC for 247 individual meters as opposed to one master meter.

[¶ 18] Until the SDC issue is resolved and there are findings on the reasonableness issue that are based on statutory criteria that consider all of the relevant factors, including the SDC, there is no final decision of the Commission that permits reasoned appellate review. Because there is no final decision, the appeal must be dismissed.

The entry is:

Appeal dismissed. Remanded to the Public Utilities Commission for completion of the System Development Charge proceeding and proper findings, tied to identified statutory criteria, on the issues relating to the metering policy.