STATE OF VERMONT

SUPERIOR COURT
Vermont Unit

ENVIRONMENTAL DIVISION
Docket No. 124-9-13 Vtec

Dorr et al Earth Extraction Appeal

DECISION ON MOTION

**Decision on Cross-Motions for Partial Summary Judgment**

This case involves a sand and gravel extraction operation on two parcels of land in the Town of Manchester, Vermont (the Town). The extraction operations on both parcels pre-date the Town's zoning ordinances and constitute a pre-existing use. On May 7, 2013 the Town Planning Director and Zoning Administrator (ZA) issued an opinion that Donald Dorr, Dorr Oil Company, Inc., and MGC, Inc. (Appellants) needed a zoning permit to "commence or continue" any extraction operations on either parcel. Appellants appealed this opinion to the Town of Manchester Development Review Board (DRB). In an August 21, 2013 decision, the DRB affirmed the ZA's determination that a zoning permit was necessary for extraction operations on one or both of the parcels. Appellants timely appealed that decision to this Court. In their motion for partial summary judgment, Appellants ask this court to hold that an expansion in the area being excavated does not require a permit as a matter of law. The Town has filed a cross-motion for summary judgment taking the opposite position. Appellants are represented in this appeal by Nathan H. Stearns, Esq. The Town is represented by Robert E. Woolmington, Esq.

**Factual Background**

For the sole purpose of putting the pending motions into context the Court recites the following facts which it understands to be undisputed unless otherwise noted[1]:

1.    On July 22, 1987, Logan Dickie, Jr. and Phyllis Beattie Dickie conveyed approximately 89 acres of land (the Property) located off Barnumville Road in the town of Manchester, Vermont to Real Estate Equities, Inc. (REEI).

---

[1] Many of our facts are taken from the parties' stipulated facts. Facts relating to real property ownership and prior permitting efforts are helpful to a general understanding of the land at issue in this matter, however, these facts are not material to the legal question we consider in this decision.

2.  The Property contains a significant deposit of sand and gravel that extends throughout the Property.

3.  On June 7, 1994, REEI conveyed approximately 47 acres of the northern portion of this parcel (the Northern Parcel) to Dorr Oil Company. This included an approximately 50 foot wide access road to the Northern Parcel that REEI had acquired after the 1987 conveyance.

4.  Also on June 7, 1994, REEI conveyed approximately 42 acres of the southern portion of the Property (the Southern Parcel) to Donald Dorr in his individual capacity.

5.  On May 9, 1995 REEI executed a document entitled "Corrective Warranty Deed" that purported to convey the Northern Parcel to Donald Dorr in his individual capacity. That same day, Mr. Dorr executed a warranty deed that purported to convey the Northern Parcel to MGC, Inc. a corporation controlled by Mr. Dorr. It is unclear whether the parties purported to have executed these conveyances had any legal interest in the property at that time.

6.  At least three small areas on the Southern Parcel and one small area on the Northern Parcel were used for sand and gravel extraction operations prior to the adoption of the Town of Manchester Zoning Ordinance in 1970. The parties dispute the extent, timing, and continuation of those uses.

7.  The parties agree that there has been expansion in the area that has been physically disturbed in order to extract sand and gravel from the Property. The parties dispute the extent, location, and timing of this expansion.

8.  On November 9, 1972, Albert Rossi obtained Act 250 Land Use Permit #8B0018 to develop a 19-lot subdivision on a parcel of land abutting what is now the Northern Parcel.

9.  On November 24, 1987, an amendment to Land Use Permit #8B0018 reconfigured the previously approved subdivision. This permit amendment, #8B0018-1, was issued to then-owners REEI and Richard Booth.

10. On July 25, 1990, Richard Booth, owner of the Northern Parcel, obtained Vermont State Subdivision Permit EC-8-0760 authorizing a 19-lot subdivision on the Northern Parcel.

11. On September 7, 1990, Richard Booth obtained Act 250 approval for a 19-lot subdivision on the Northern Parcel under Permit #8B0018-2. The Permit was amended on September 25, 1992 as Permit #8B0018-3 and again on October 11, 1994 by the current owner of the Northern Parcel, Donald Dorr, as Permit #8B0018-4.

12. In addition to the Act 250 Permit for a subdivision on the Northern Parcel, Town Subdivision Permits were also issued. In a decision dated May 14, 1990, the Town of Manchester Zoning Board of Adjustment (ZBA) approved a 19-lot subdivision on the Northern Parcel. Based on this ZBA approval, Town Permit # 89-04-15 was issued to the then-owner Richard Booth, on May 22, 1990. The ZBA decision prohibited the extraction of gravel except as part of the construction of the infrastructure and residential uses contemplated in the subdivision permit. Gravel extraction for sale was expressly prohibited.

13. On October 14, 1992, the Town of Manchester Zoning Board of Adjustment (ZBA) approved amendments to the 1990 Town Permit related to the access road and fire pond in lieu of water storage tanks as originally approved. A Permit was issued based on this decision on November 17, 1992.

### Discussion

In their cross-motions for summary judgment, the parties primarily dispute what constitutes an "expansion" of the preexisting sand and gravel extraction operation such that a municipal permit is required. While there are significant facts that are either in dispute or have not been fully presented to the Court, the parties agree on two things: first, that the gravel extraction operation existed prior to the current zoning ordinance, and second, that the area where extraction operations occur has expanded since the adoption of the zoning ordinance. Based on these facts alone, the question of whether a permit is required under the current ordinance is appropriate for summary judgment and ripe for this Court's review.

We will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the Court looks at each motion individually and gives the opposing party the benefit

3

of all reasonable doubts and inferences. See City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" so long as they are supported by materials in the record. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted); V.R.C.P. 56(c) (laying out summary judgment procedures). Both the party claiming that a material fact is undisputed and the party seeking to establish a dispute of material fact must support their assertions with citations to materials in the record. V.R.C.P. 56(c).

The Town of Manchester Zoning Ordinance (the Ordinance) has a section dedicated to "Earth Products Removal." Ordinance § 8.3. This section allows for the removal of "[t]opsoil, rock, sand, gravel, or similar materials" in any district, provided a special permit is issued by the Development Review Board. Id. at § 8.3.1. In addition to satisfying all criteria for conditional use approval, "including considerations of noise and vibration," this special permit also requires consideration of grading plans, drainage plans, and reclamation of the site after conclusion of the operation, as well as special consideration for removal of earth resources from streambeds. Id. The Ordinance further provides that "[e]xisting sand and gravel, or other extractive operations, must conform with the bylaw from its effective date with respect to any enlargement of the area on which such operations are conducted." Id. at § 8.3.2. The primary question now before the Court is whether § 8.3.2 requires Appellants to obtain a permit under § 8.3.1 in order to continue sand and gravel extraction on the Property.

The familiar rules of statutory construction apply to the interpretation of a zoning ordinance. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear it must be enforced and no further interpretation is necessary. Vermont Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing Hill v. Conway, 143 Vt. 91, 93 (1983)). In construing statutory or ordinance language, our "paramount goal" is to implement the intent of its drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply

4

common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted).

The Town argues that based on the plain language of section 8.3.2, any enlargement of the area actually being excavated requires a permit because the area being excavated is the area where operations are being conducted at any given time. While this is one possible interpretation, we find that the phrase "enlargement of the area on which such operations are conducted" is open to multiple reasonable interpretations.

Appellants argue that under the "diminishing assets" doctrine, the majority rule in the United States, the entire parcel containing the resource is the area of the operation. As one court has described the diminishing assets doctrine:

> In a quarrying business the land itself is a material or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use . . . must yield to the realities of the business in question and the nature of its operations. We think that in cases of a diminishing asset the enterprise is "using" all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously it cannot operate over an entire tract at once.

Du Page County v. Elmhurst-Chicago Stone Co., 165 N.E.2d 310, 313 (Ill. 1960). Appellants argue that if the Court adopts the diminishing assets doctrine, a mere expansion in the area being excavated since the adoption of the zoning ordinance cannot be grounds to require a permit under the Ordinance as a matter of law.

To date, neither this Court, nor the Vermont Supreme Court, has expressly adopted the diminishing assets doctrine with respect to local zoning regulations. Prior Act 250 decisions are, however, illustrative of the issue before the Court. In considering whether preexisting gravel extraction operations require a State Land Use (Act 250) Permit, the former Environmental Board has adopted a similar rule based on similar reasoning:

> The Board has previously ruled that contiguous expansion of the excavation area within the pre-existing tract is not a change, provided that the excavation operation is expanded and operated in essentially the same manner as it was before [the adoption of Act 250]. It is in the nature of gravel pits to continue to expand the extraction area while following a gravel vein.

5

E.g. <u>Re: Dale E. Percy, Inc.</u>, Declaratory Ruling No. 251, Findings of Fact, Conclusions of Law, and Order at 5 (Vt. Envtl. Bd. Mar. 26, 1992) (citations omitted).[2] We find no reason why this same logic and reasoning should not apply within the municipal land use context. Thus, we conclude that the area being used by an earth extraction operation includes not only the area of land presently disturbed but the entire parcel containing the resources on which extraction activities are taking place as well. An enlargement of the area of disturbed land, without any other changes, does not therefore require a permit under Ordinance § 8.2.3.

This, however, does not mean there are no limitations on a preexisting sand and gravel extraction operation or that such an operation may never need a permit.[3] Ordinance section 8.3.2 states only that an existing sand and gravel extraction operation needs a permit for any enlargement of the area of operation. While we conclude that the diminishing assets doctrine informs the definition of "area on which such operations are conducted" under § 8.3.2, neither this conclusion nor the plain language of § 8.3.2 eliminates the requirement that <u>preexisting non-conforming</u> uses obtain authorization before increasing extraction rates, truck traffic, or the type or amount of equipment in use. The Ordinance provides that "[n]o nonconforming use shall be extended or expanded, except with the approval of the Development Review Board . . . ." Ordinance § 8.1.1(3). Additionally, "[a] nonconforming use, which has been discontinued

---

[2] The Vermont Supreme Court has held that the diminishing assets doctrine does not obviate the requirement that a preexisting development receive an Act 250 permit if it undergoes a substantial change. <u>In re L.W. Haynes, Inc.</u>, 150 Vt. 572, 574 (1988). It is within the context of these Act 250 cases that the Environmental Board had applied reasoning substantially similar to the diminishing assets doctrine and the Board's reasoning was not disturbed by the Vermont Supreme Court on appeal. <u>Re: Robert and Barbara Barlow</u>, Declaratory Ruling No. 234, Findings of Fact, Conclusions of Law, and Order, at 8–9 (Vt. Envtl. Bd. Sept. 20, 1991) (applying rule similar to diminishing assets doctrine), aff'd, <u>In re Barlow</u>, 160 Vt. 513 (1993).

[3] The Supreme Court of New Hampshire has adopted the diminishing assets doctrine, but requires the person who excavates earth resources to first "prove that excavation activities were actively being pursued when the law became effective; second, he must prove that the area that he desires to excavate was clearly intended to be excavated, as measured by objective manifestations and not by subjective intent; and third, he must prove that the continued operations do not, and/or will not, have a substantially different and adverse impact on the neighborhood." <u>Town of Wolfeboro (Planning Bd.) v. Smith</u>, 556 A.2d 755, 759 (N.H. 1989); see <u>Town of Levant v. Seymour</u>, 855 A.2d 1159, 1166 (Me. 2004) (noting that to avail himself of the diminishing assets doctrine "[t]he excavator must show by objective evidence that the land where the excavator wants to extend excavation was clearly intended to be excavated before the ordinance became effective"). "Further, where more than one lot is owned by the excavator prior to the ordinance, expansion is not allowed to a lot that had not previously been part of the excavation operation." <u>Seymour</u>, 855 A.2d at 1166 (citing <u>Hansen Bros. Enters., Inc. v. Bd. Of Supervisors of Nev. County</u>, 907 P.2d 1324, 1340 (Cal. 1996)). While we recognize these limitations adopted by other jurisdictions, the question of whether such limitations may apply to a case before the Court is not before us and we do not decide that question here.

for a continuous period of 19 months, shall not be resumed thereafter." Id. at § 8.1.1(4). Nothing in § 8.3.2 exempts preexisting nonconforming sand and gravel extraction operations from these ordinance provisions. Case law also supports our finding that an increase in extraction rates, truck traffic, or the type or amount of equipment in use requires a permit. "One of the primary goals of zoning is to gradually eliminate nonconforming uses because 'they are inconsistent with the purpose of developing use-consistent areas in communities.' As such, we strictly construe zoning ordinances allowing nonconforming uses." In re Casella Waste Management, Inc., 2003 VT 49, ¶ 9, 175 Vt. 335 (quoting In re Gregoire, 170 Vt. 556, 559 (1999) (mem.)) (internal citations omitted). Within the Act 250 context, increased extraction rates at a preexisting gravel extraction operation and corresponding increases in the number and size of trucks entering and exiting the operation, which may result in a significant impact under the ten Act 250 Criteria, constitute a "substantial change" to the preexisting operation which requires an Act 250 Permit or amendment. In re Barlow, 160 Vt. 513, 522–23 (1993). We see no reason why significant changes in extraction rates, truck traffic, the type or amount of equipment being used, and similar factors would not constitute an expansion of a preexisting nonconforming sand and gravel extraction operation as well. At this stage of this matter, however, we do not have sufficient undisputed facts regarding the historical sand and gravel extraction operation or Appellants' current use of the property to determine whether Appellants' use constitutes an enlargement of the preexisting operation.

Finally, we note that it is undisputed that the Northern Parcel was subject to both State and Municipal permits that prohibited sand and gravel extraction operations. The facts before the Court are not sufficiently clear as to whether these permits were abandoned or expired, and if so, when such expiration or abandonment occurred, or whether sand and gravel extraction continued on the Northern Parcel while it was subject to the permit conditions. The Court is therefore unable to determine whether extraction can take place without a permit or permit amendment on the Northern Property.

In its cross-motion for summary judgment the Town also asks this Court to find as a matter of law that the storage of construction materials on the parcel constitutes a change in use requiring a permit. The scope of the appeal is limited, however, to issues raised in the

Statement of Questions. V.R.E.C.P. 5(f); In re Garen, 174 Vt. 151, 156 (2002). Here, the Statement of Questions makes no reference to the storage of construction materials, nor could it as the DRB decision appealed to this Court relates only to the expansion of the gravel extraction operation. We therefore conclude that any questions related to storage of construction materials on the Property are not properly before the Court.

## Conclusion

Pursuant to the diminishing assets doctrine as it relates to earth resource extraction operations, a lawfully preexisting sand and gravel extraction operation may continue to expand along a vein of sand or gravel within the greater parcel without the expansion alone constituting an enlargement of the area on which such operations are conducted under the Town of Manchester Zoning Ordinance. Other significant changes to a lawfully preexisting use may, however, require that the operation come into compliance with the current zoning regulations. Because there are insufficient undisputed facts about Appellants' current operation, the relation of that operation to the pre-zoning operation, and the effect of permits received and changes in ownership of the Property, we cannot determine whether Appellants' operation requires a zoning permit under the Town of Manchester Zoning Ordinance.

For the above stated reasons, we therefore **DENY** both Appellants' Motion for Summary Judgment and the Town's Cross-Motion for Summary Judgment.

Electronically signed on October 10, 2014 at 10:38 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

8